UNITED STATES FIDELITY & GUARANTY CO. *v.* STATE, TO USE
OF CASSELL.

[69 South. 1007.]

1. EXECUTORS AND ADMINISTRATORS. *Settlement of estates. Courts. Jurisdiction. Parties aggrieved. Construction. Power of executor and court.*

A chancellor may, in vacation, approve an executor's final account under the authority conferred by Code 1906, section 507, providing that in matters testamentary, the chancellor may do in vacation all things that may be done in term time, but all laws governing the action of the chancery court and the process and procedure therein shall apply when the chancellor acts in vacation; where the final account contains the requisites prescribed by section 2124 and where the verified written statement prescribed by section 2125 was filed with the account and where the account remained on file subject to the inspection of any person interested, and where summons was issued and executed as provided in section 2126.

2. EXECUTORS AND ADMINISTRATORS. *Settlement of accounts. Jurisdiction.*

While it is technically true that the chancery court of one county cannot be held in another county, the action of the chancellor in approving, in vacation, an executor's final account pursuant to a summons, commanding the parties interested to appear before him in another county, did not invalidate the proceedings.

3. EXECUTORS AND ADMINISTRATORS. *Settlement of estate. Parties aggrieved.*

Where an infant beneficiary under a will received her share of the estate, and neither she nor any one acting for her complained, another beneficiary had no right to complain, the course of the procedure not defeating the purpose of the will.

4. WILLS. *Construction. Powers of executor and court.*

Under a will directing the executor to continue the testator's business for not more than three years, during which time he shall liquidate the business, only buying such goods as may be necessary for the purpose, and declaring that if during the

three years the executors or heirs shall think it best that the business shall cease, the executors or heirs may petition the court and it may determine the manner of disposing of the business, the court was authorized in its discretion to order the executor, who was unable to sell the business at public auction, to sell the same to one of the beneficiaries for herself and as guardian for an infant beneficiary.

APPEAL from the chancery court of Warren county.
HON. E. N. THOMAS, Chancellor.

Suit by the State of Mississippi for the use of Duncan G. Cassell, a minor, against the United States Fidelity & Guaranty Company. From a decree overruling a demurrer to the original bill of complaint, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mc Laurin, Armistead & Brien,* for appellant.

*Catchings & Catchings* and *Henry & Canizaro,* for appellee.

COOK, J., delivered the opinion of the court.

This appeal is prosecuted from a decree of the chancery court of Warren county overruling appellant's demurrer to the original bill of complaint filed by appellee.

A. G. Cassell, a resident of Warren county, died testate in August, 1902, and his estate was administered by the executor named in his will. The bill of complaint was filed for the purpose of having the court set aside a decree rendered by the chancellor in vacation approving the final account of the executor, and for an accounting.

It appears from the bill of complaint that A. G. Cassell, deceased, left a widow and two children, who were his sole heirs at law, as well as the beneficiaries of his will, except a few small legacies not in controversy here. Alma S. Cassell at the time her father died was about

thirteen years of age and was the child of a former marriage. Duncan G. Cassell, in whose interest this action was brought, was born after his father's death. The most important part of the testator's estate was a large and profitable drug business located in the city of Vicksburg, and the disposition of this business is the principal subject matter of this litigation. The executor was authorized to continue this business for three years, but he was admonished by the will that this business was to be liquidated during this period, and in the meantime he was to buy only such goods as was necessary for this purpose.

In March, 1905, the executor filed a petition, in which the widow, Mrs. M. D. Cassell, for herself and as next friend of her minor son, Duncan Cassell, and also Alma S. Cassell, minor, through her guardian, joined, asking that the court direct the executor to sell the drug business under the direction and on such terms as the court should prescribe. The prayer of this petition was sustained, and the court ordered the business sold at public auction to the highest bidder for cash.

In March, 1906, the executor filed a petition stating that he had advertised the drug business for sale in accordance with the order of the court but prior to the date fixed for the sale a quarantine was put in force against the city of Vicksburg, where the sale was to be made, and, believing that the business would be sold at a sacrifice, he had therefore declined to make the sale. In this petition the executor advised the court that, since the previous order of the court directing the sale of the business at public auction, Mrs. A. G. Cassell had bought the interest of the minor, Alma Cassell. The court entered a decree approving the action of the executor in not making the public sale, and further reciting that Mrs. A. G. Cassell, by permission of the court, had bought the interest of Alma S. Cassell, minor, at private sale, and that said private sale was authorized

by the terms of the will and was approved by the court.
On the same date, the executor filed his final account,
and the court entered a decree reciting that the ac-
count had been filed and that the executor had filed a
statement under oath of the names of the heirs, devisees,
and legatees.  In the same order the court approved
and confirmed the final account, and ordered that the ac-
count be filed and lay over as the law directs and that
process issue to the parties in interest commanding them
to appear before the chancellor in vacation or at the next
term of the court to show cause why the final account
should not be finally allowed and approved.  Process
was served personally on John L. Cassell, guardian of
Alma S. Cassell, minor, and on the said minor, and by
publication on the other parties in interest commanding
them to appear before the chancery court of Warren
county, in vacation, on the 21st day of May, 1906, at
Woodville, Wilkinson county, Mississippi, to show cause,
if any they could, why the final account of said executor
should not be allowed and approved.

Going back a little, it appears from the record that in
March, 1906, the chancery court of Warren county, the
court in which the estate was being administered, in ap-
proving the action of the executor in regard to his omis-
sion to sell the drug business at auction, and in approv-
ing the sale of Alma's interest in the drug store to Mrs.
A. G. Cassell, also directed the executor to continue the
business until the approval of his final account then on
file, and also decreed that after the approval of his final
account in vacation the executor should turn over and de-
liver to Mrs. Cassell for herself, and as guardian for her
infant son, Duncan G. Cassell, the entire drug business.

The first and foremost question presented for our
decision is: Is the chancellor empowered by section 507,
Code 1906, to approve a final account in vacation, upon
process served on the parties in interest returnable to
a fixed day in vacation?

It will be noted that the final account was filed in the chancery court of Warren county in March and was then approved, and it will also be noted that the account was not finally allowed and the executor discharged until May thereafter; the final account remained on file "subject to the inspection of any person interested" for more than one month from the service of the summons.

We find that section 507, Code 1906, in the broadest and most comprehensive language, confers upon the chancellor the power to do in vacation all things which he was empowered to do in term time in matters testamentary. But it is contended that section 2126, referring to final accounts especially, in equally explicit terms treats final accounts as other and ordinary suits in the chancery court, and requires that summons to interested parties must be made returnable to a regular term of the court. So it would seem that we have two statutes, one of which empowers the chancellor in a certain class of cases to do anything in vacation he is authorized to do in term time, and the other seems to provide that one of the class mentioned in the first class must be made returnable to the regular term of court. The following language is employed in section 507, viz.:

"And all laws governing the action of the chancery court in such matters, and the process and procedure therein, shall apply when the chancellor shall act. . . . in vacation."

The record shows the process and procedure indicated by sections 2124, 2125, and 2126 were observed in the instant case. The final account here contained just what section 2124 required—the written statement under oath prescribed by section 2125 was filed with this account, and the account remained on file "subject to the inspection of any person interested," and the summons was issued and executed strictly in accordance with section 2126.

There can be no doubt that the legislature empowered the chancellor to enter the decree in question, and there

is no room for doubt that all of the statutes were complied with. Sections 2124 and 2125 deal with final accounts whether returnable in term time or in vacation. Section 507 in clear and unambiguous language empowers the chancellor in vacation to allow a final account provided "all the laws governing the action of the chancery court in such matters" have been complied with. It follows that the chancellor in vacation was empowered to allow this account, and his action in doing so was perfectly valid and binding on all parties who had legal notice of his action.

The point is made by appellee that the summons issued in this case is defective and void because the parties interested were commanded "to appear before the chancery court of the county of Warren in said state in vacation, . . . at Woodville, Wilkinson county." It is argued that the chancery court of one county is not empowered to convene in another county. We do not think that this criticism of this summons is sound. Technically speaking, it is true that the chancery court of Warren county cannot be held in Wilkinson county, but it is also true that the court necessarily includes the chancellor. We believe that it would be hypercritical to invalidate the procedings for this technical error, if error it was.

The bill of complaint also alleges that the report of the executor asking the court to confirm the sale of Alma Cassell's share of the drug business to Mrs. Cassell did not state the the facts. It is alleged that the executor had in fact negotiated the sale of this interest to one Steve Platte, and that said Platte did in fact become the owner of said minor's share. It is alleged that, had the true facts been brought to the attention of the chancellor, he would not have approved the sale of Alma's share, and would not have authorized the executor to turn over the assets in his hands, and would not have entered the decree discharging him from further accounting and a decree discharging the sureties on his bond.

Neither Alma Cassell, nor any one representing her, is complaining that the money paid her for her share in the estate was paid for the purpose of vesting the title to her interest in the estate in Steve Platte instead of Mrs. Cassell; and there is nothing in the will which indicates that this course of proceeding defeated the purpose of the testator. Alma got the money, and we can see no reason why Duncan should be allowed to complain.

Finally, it is insisted that the purpose of the testator was defeated by the final decree allowing the final account of the executor to turn over the assets in his hands to Mrs. M. D. Cassell for her use and for that of her infant son, Duncan Cassell. The argument is made that the word "dispose" used in the will necessarily meant a parting with the said assets and a conversion of the same into cash or securities so that Mrs. Cassell and his children should no longer be concerned in a going mercantile business.

We here quote the language of the will referring to the property in controversy, viz:

"My executor may continue my drug business for a period of not exceeding three years, during said time he shall liquidate said business, only buying such goods as may be necessary for said purpose, and making no large or long accounts for or against said business. If during said three years, my executor or heirs shall think it best that said business shall cease, they or either of them may petition to the court and the court may determine as to the manner of disposing of said business.

"At the end of three years, my executor shall dispose of said business or stock of goods remaining unsold, as well as all accounts due said business, in manner and form as ordered by the court.

"Said executor shall present his final account within three years and six months from the date of his qualification, and shall file annual accounts."

It is our opinion that the will vests the power and discretion in the court to do what was done in this case. This testator, after providing for an auction sale to the highest bidder, then told the executor if he did not sell the property at public auction he would go to the court, and the court was authorized to determine the manner and form of disposing of the business. This was done, and the executor and his bondsmen cannot be held for the actions of the court.

There is no equity on the face of the bill, and the decree of the court overruling the demurrer is reversed, and decree will be entered here dismissing the bill.

*Reversed.*