Howell *et al. v.* Howell.

(Division A. April 7, 1930.)

[127 So. 566. No. 28493.]

**J. M. Coleman, Leftwich & Tubb,** and **D. R. Stump,** all of Aberdeen, for appellants.

Paine & Paine, of Aberdeen, for appellee.

Argued orally by **J. M. Colman** and **George J. Left-**wich, for appellant, and by **Thos. F. Paine,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellee, Dock Howell, as executor of the estate of J. V. Jackson, deceased, filed his final account in the chancery court of Monroe county on May 13, 1929, and procured the clerk of that court to issue process and have publication for nonresident distributees returnable before the chancellor in chambers at Tupelo, Mississippi, in Lee county, on July 6, 1929.

On July 5, 1929, a number of heirs at law and distributees filed exceptions to the final account in the clerk's office in Monroe county. On the 6th day of July the exceptors, by their attorney, appeared at Tupelo, the time and place named in the summons and publication process, and it then appeared that all necessary parties to the final account had not been served with process. Thereupon the chancellor made an order directing the process for certain parties to be issued or published returnable before him in vacation at Aberdeen in Monroe county on August 10, 1929. During the interim, on July 15, 1929, according to law, there was to be held a regular term of the chancery court in Monroe county at which time, on motion of the executor, the "cross-bill" of the exceptors filed as a part of their exception was stricken from the file.

On the day named in vacation for the hearing the parties appeared, the exceptions were heard, and the matter was taken under advisement for decision. On the 17th day of August the chancellor rendered a written opinion upon which a decree was entered approving the final account after sustaining one specific exception. The exceptors filed their pleadings and appeared in court without making any objection to the time and place of the hearing of the final account. Feeling aggrieved by the decree, the exceptors prosecute an appeal here.

The main question presented to the chancellor for decision involved a construction of the will of J. V. Jackson, deceased, which we here set forth:

"State of Mississippi, Monroe county.

"I, J. V. Jackson, being of sound and disposing mind, do hereby and by these presents make this my last will and testament and dispose of my real and personal property of every kind and description as follows to-wit: At my death I give all of my real and personal property of every kind and description, including money, notes, securities, bonds, stamps and choses in action to my wife Lucy P. Jackson and my adopted son Robert Jackson, one-half interest each, but my said property as aforesaid shall not be divided until my said adopted son Robert arrives at the age of twenty-one years, then he shall be paid the sum of one thousand dollars in money, but the remainder due him and the amount due my said wife shall be and remain in my estate until the death of my said wife, except the sum of three hundred dollars to be paid to my said wife each year by my executor for the support of my said wife and said son Robert; and at the death of my wife then my said son Robert shall take all of my said property as aforesaid. But should my son Robert die before my wife dies, then my said wife Lucy P. Jackson shall have and use the same as long as she lives, then at her death, all my property remaining shall be equally distributed between my brothers and sisters or their survivors. I hereby direct and set aside the sum of five hundred dollars for a monument to be erected at my grave.

"I hereby appoint Dock Howell as my executor, to execute this my last will and testament, and that he be required to make bond and report to court.

"Witness my hand and signature, this the 18th, day of March, 1922.

"J. V. (his mark) JACKSON.

"Witnesses:                         CHAS. L. TUBB.
                                    "B. M. TUBB.

"This is to certife I want R. A. Myatt five hundred dols monie now for father and mother grave."

It appears that Lucy P. Jackson and Robert Jackson survived the testator, the former the widow, the latter the foster son. J. V. Jackson died April 19, 1924. Robert Jackson, the foster son, died in 1929. The deceased left a small country farm consisting of thirty-six acres and a modest home thereon in which the widow and the foster son continued to live, and after the death of the foster son the home was occupied by the widow to the date of the hearing. The decedent also left a personal estate consisting of money, bonds, choses in action amounting to nine thousand one hundred seventy-two dollars.

The brothers and sisters living, named in the will, and the survivors of the others consisting of many nephews and nieces filed exceptions and contended that the proper construction of the will was that the testator did not intend for the bequest to be passed into the hands of the widow, saying that she was only entitled to the interest on the proceeds of personal estate, and that therefore the executor should not be allowed to file the final account, but should continue as executor until the death of the widow. They further contend that the will bequeathed a life estate in the real and personal property to the widow with remainder over to the brothers and sisters, or their survivors. Robert became twenty-one years of age in July, 1925, and was paid the sum of one thousand dollars by the executor. It was the further contention of the exceptors that in all events, where the personal estate consists of money or personal property easily convertible into cash, and where his personal estate is to be turned over to the widow, she should be required to execute a bond for the protection of the remaindermen. It was further charged in the exceptions that the widow was seventy-four years of age and not competent to handle the estate; that she was illiterate and not mentally capacitated; and that she would dissipate the estate.

The widow and the executor contended (1) that the will conveyed the estate in fee absolutely to the widow, and that at all events it was not the intention of the

testator, from the terms of the will, to limit the widow to the interest on the money, but that she was entitled to the use and enjoyment of the estate bequeathed and devised to her by her deceased husband. The exceptors offered some evidence tending to show that Mrs. Jackson was not a healthy woman, that she was aged, and some interested witnesses expressed the opinion that she would dissipate the estate. On the other hand, there was evidence offered that she was capable of handling the estate; that she had kept the books of her husband; that they had lived together happily for forty years; and that she, by her economy and the performance of her duties as a housewife, had aided and assisted her husband in the accumulation of this estate.

The chancellor construed the will as conveying to the widow a life estate in the real and personal property with remainder over to the brothers and sisters and survivors of deceased brothers and sisters who are all in court as exceptors, and it was further decreed that the remainder-men were to take per stirpes. On this appeal there are minor exceptions to the account which we will notice in this opinion. The widow, Mrs. Jackson, prosecutes a cross-appeal and presents the single simple question that the chancellor erred in holding that she only took a life estate under the will to the realty.

First, the action of the court in hearing this cause in vacation on process issued in vacation returnable to a county other than that in which the administration was pending is assigned as error, it being contended that the chancellor was without jurisdiction to hear the final account in vacation on process returnable in vacation. They contend that the case of United States Fidelity & Guaranty Company v. State, 110 Miss. 16, 69 So. 1007, is not applicable and controlling in this case, and points out the difference; in that case the final account was heard without process at the regular term of court in Warren county, and the court in term then ordered the process returnable before it at Woodville, Wilkinson

county, at a later date, and so heard the case; and it was contended in that case that the court was without jurisdiction. This court there construed section 1870, Hemingway's 1927 Code, section 2126, Code of 1906, in connection with section 268, Hemingway's 1927 Code, section 507, Code of 1906. In the former section this language is used: "And summons shall be issued or publication be made for all parties interested, as in other suits in the chancery court, to appear at a term of the court not less than one month," etc. In the latter section, under the title "Additional powers of chancellor in vacation," among other things, it is said: "And in all other matters testamentary or of administration . . . the chancellors of the several districts of this state are hereby authorized and empowered to do in vacation all things, and to exercise all the powers in such matters that could be done by them in term time." This court held that, viewing the two sections together, a decree rendered on the final account in vacation in another county than the one in which the administration was had was a valid decree.

The appellants here appeared in the court below, filed written pleadings, and never once objected to the court's considering the matter in vacation. We think this was a complete waiver. The chancellor, as a court in vacation, had jurisdiction of the subject-matter and of the parties, and they cannot now be heard to complain. We think, therefore, we are relieved from again taking up this question. The decree was valid, and the full complete appearance of the parties conferred jurisdiction on the court.

Second, it will be observed from the will that the testator had three purposes in mind in his will: The management of his estate during the lifetime of his widow and his adopted son was vested in the executor, and the property remained in his estate, except that when the foster son reached the age of twenty-one years he was to be paid one thousand dollars, and the widow was to

be paid three hundred dollars annually for the support of herself and the son. In the event the widow predeceased the foster son, all the property was to be delivered to and become the estate of the foster son.

Third, we think it is clear that the testator directed a disposition of the property, real and personal, upon the contingency that the foster son died before the widow; in that event he provided that the widow was to have and use all of said property as long as she lived, and at her death all of said property remaining should be equally distributed among the brothers and sisters of the testator and survivors of such. The foster son having died, and the widow being yet living, the third purpose of the will has been put in operation. There is nothing in the will to manifest any intention on the part of the testator to make any different disposition of the real property from that made of the personal property; the real and personal estates are governed by the same language, and the will of the testator must be carried out.

The disposition of the real estate in this will, by its terms, are simple and elementary. The widow took a life estate therein with remainder over to the brothers and sisters and their survivors. This is also true as to the personal property. The chancellor held that this estate should be finally administered, the executor discharged, and the property turned over to the life tenant, the widow. There is no showing here that this widow will squander the property or that she will waste same to the detriment of the remaindermen; therefore, as to whether or not she shall come into possession of the estate is solvable by the terms of the will. Of course, the general rule refers especially to money or that character of personal property easily converted into money, where the interest on the fund only passes to the life tenant and the corpus is preserved for the remaindermen, but the language of the testator here, to our mind, clearly indicates that the testator intended that this widow should have and should use this property, and that she was to come into her

estate during her lifetime. There is no language in the will, taking it altogether, which can be construed as meaning that the deceased intended to limit his widow in the enjoyment of this estate. The words "to have and to use" are even stronger than the word "retained" used in Rife v. Rife, 154 Miss. 529, 122 So. 739. In Hill v. Godwin, 114 Miss. 324, 75 So. 122, the language was "to have and to hold" with reference to the estate of the life tenant, under the will, and the court held there that it was not the intention of the testator for the life tenant to take only the interest derivable from the money, and the chancery court was reversed in that case for requiring a bond of the life tenant. In Martin v. Martin, 69 Miss. 315, 13 So. 267, the will provided that the widow shall "retain the property to her sole use and benefit during her life, if she shall remain unmarried. The court held that it was not the intention of the testator to require the widow to give bond to protect the remainderman's interest, and called attention to the fact that there was a bequest of five thousand dollars for her support and maintenance, but said it was clearly not the intention of the testator to limit her to the interest accruing from said fund.

We recognize that the rule is that a bequest of money for life, with remainder over to another, is a bequest of the interest derived from the money, and that on a proper showing in a proper case that the bequest will be wasted, dissipated, and lost, the legatee for life in such a case may be, and should be, required to give security for the protection of the remainderman's interest, but it is also true that, where the will of the testator shows that it was his intention to create a life estate in the money or personal property and relieve the bequest of the operation of the general rule as to security, the exception will be enforced in this state.

We cannot disturb the chancellor's finding as to the capacity of the widow in this case to manage this estate. When we consider that she lived with the deceased for

forty years; that she kept his accounts; that during his lifetime she was evidently not a spendthrift; that by their joint efforts, necessarily, this fund was accumulated, and when we remember that she could have gone into the chancery court and renounced this will and have thereby acquired a title to at least a one-half interest in this entire estate, we shall not wander afield for authorities in the light of the cases cited by us above. These cases are controlling here, and this case is of the same class. The widow in this case was entitled to the estate. The chancellor did not err in refusing to require her to give bond; therefore, the estate was ready to be closed, and to require the executor to remain in office would be equivalent to applying the general rule as announced in the above cases, which we decline to do.

2. We are of the opinion that the allowance of any amount as a credit to the executor as payment of premiums on the fire insurance policy on the house, situated on the land, was not proper. The life tenant had an insurable interest in the house; the remaindermen also had an insurable interest in it. Under the terms of this will we cannot say that the executor was invested with the power or the duty to have the property of others insured at the expense of the estate. These items amount to seventy-five dollars and ninety cents, and will be charged to the executor in his account, and thereby increase the amount, as found by the chancellor, due by him to the estate to six thousand three hundred ten dollars and thirty-three cents; this includes eighty-six dollars disallowed by the chancellor, but from this sum is to be paid allowances of costs, attorney fees, and commissions made by the chancellor in the final decree. To this extent the decree of the court below will be modified.

3. Our construction of the will disposes of the cross-appeal. We do not think it is necessary for us to discuss the construction of the will further. The testator made no difference in the disposition of his property between

real and personal property. The intention of the testator is manifest.

The decree of the court below will be affirmed in all respects, except that the executor will be charged with the amount of premiums paid on fire insurance.

Affirmed, as modified, on direct appeal.

Affirmed on cross-appeal.