BROWN *v.* FRANKLIN.

(Division A.   April 7, 1930.)

[127 So. 561.   No. 28542.]

John F. Frierson, of Columbus, for appellant.

Owen & Garnett, of Columbus, for appellee.

Argued orally by **Jno. F. Frierson,** for appellant, and by **C. L. Garnett,** for appellee.

**Cook, J.,** delivered the opinion of the court.

Malcolm A. Franklin died in Lowndes county, Mississippi, leaving a last will and testament reading as follows:

"I, Malcolm Franklin, a citizen of Columbus, Lowndes county, Mississippi, being of sound mind but appreciative of the uncertainty of life, do make and do declare this to be my last Will and Testament. I hereby revoke and cancel any and all former wills made by me.

"I give and bequeath to Miss Mattie Lou Brown all my property both real and personal. Miss Brown is now a citizen of Columbus, Mississippi.

"Miss Brown is to enjoy the income from all my property until her death. In that event all the property will be given to my great nephew Malcolm A. Franklin, son of Cornell S. Franklin.

"I hereby appoint the aforesaid Miss Mattie Lou Brown executrix of this my last will and testament.

"I want her to act without giving any bond, nor will she be required to make any report to any court."

This will was duly admitted to probate in Lowndes county by the chancery clerk, in vacation, and letters testamentary were issued by him to Miss Mattie Lou Brown, the executrix named in the will, no bond having been required of her. She made no inventory of the estate, and at the next or succeeding term of the chancery court, Malcolm A. Franklin, a minor, by Mrs. Estelle O. Franklin, his mother and next friend, filed a petition alleging, in substance, that the decedent's estate consisted of stocks, bonds, and jewelry, which he kept in a lock box in the Columbus National Bank, and money in bank: and charged, upon information and belief, that the executrix had taken possession of the estate, and had disposed of valuable diamonds, jewelry, and other per-

sonal property consisting of furniture, etc.; that she had said she would not file an inventory, and that, if necessary, she would use the corpus of the estate for her private use and purposes, notwithstanding the fact that under the will she was to enjoy only the income for life; that the executrix had only a life estate in the property, and at her death it would go to the minor petitioner; that the petitioner believed it was for his best interest for the court to protect the estate, otherwise it would be dissipated, and he would be deprived of the enjoyment and use of the estate so bequeathed to him. The petition prayed that an order be granted prohibiting the Columbus National Bank from paying out any money on the checks of the administratrix or allowing any withdrawals from the lock box in which the assets of the estate were deposited; that the executrix be required to file an inventory and give a bond for the preservation of the estate; and that appraisers of the estate be appointed, who, together with the executrix, should be permitted to have access to the decedent's lock box for the purpose of making such inventory and appraisement.

To this petition the executrix interposed special demurrers, assigning as the grounds thereof, first, that the petition was prematurely filed, as the time provided by law for filing an inventory and appraisement had not expired; and, second, that there is no provision in law or equity for any restraining order as prayed for against the Columbus National Bank, and no law or provision for any injunction without bond being given. The demurrers were overruled, and the court entered a decree finding that it was to the best interest of the estate that an inventory be filed and appraisement be made, and ordered the executrix to file an inventory of the estate, and appointed appraisers to appraise the estate within thirty days from the date of the decree, and also ordered the executrix to give a good and sufficient bond conditioned for the proper discharge of her duties as executrix, the amount thereof to be fixed by the clerk of the

chancery court. This decree also ordered the next friend of the petitioner to execute a bond in the sum of five hundred dollars in favor of the Columbus National Bank and the executrix to indemnify them against loss sustained by reason of the restraining order directing the bank to hold intact the stocks, bonds, jewelry, and money of the estate until the filing of the inventory and appraisement, and the execution of a bond by the executrix, and allowed the executrix sixty days within which to answer the petition.

Thereafter, in compliance with this decree of the court, the executrix prepared and filed a complete inventory of the estate, and the appraisers appointed by the court appraised the property shown on this inventory, and filed a report of their acts in so doing, which showed the total valuation of the property to be twenty-seven thousand four hundred forty-two dollars and fifty cents, and the executrix thereupon executed a bond in the penal sum of twenty-eight thousand dollars, conditioned according to law for the faithful performance of her duties as such executrix.

Within the time allowed by the order of the court, the executrix answered the petition, and admitted that the estate consisted of stocks, bonds, jewelry, and money in bank, and that it was kept in a lock box at the Columbus National Bank, with the exception of the jewelry, a part of which had been kept about the person of the testator during his lifetime, and the balance had been in the possession of and worn by the executrix for many years prior to the death of the testator. She admitted that the estate was in her possession, but denied that she had disposed of any diamonds or other jewelry, except two stick-pins valued at five and ten dollars, respectively, and one gold watch, which she had given to certain of her nephews in compliance with a request made by the testator shortly before his death. She further averred that, in compliance with a request of the testator made shortly before his death, she had paid the sum of fifty dollars

to John B. Sale, and had given certain articles of furniture to a relative of the testator. In her answer the executrix denied that the testator devised to her only a life estate, and denied that she had ever said she would use the corpus of the estate for her private use; and she made her answer both a demurrer and a cross-bill, in which cross-bill she asked the court to construe the will as to whether she has or has not a fee-simple title in and to the said property of said estate; second, as to whether or not, if she does not have a fee-simple title, she has full power and authority in and over said property, and whether or not the said will does not mean and intend that only such part of the corpus of the estate as may be left, or left unused by her at her death, shall go to the said Malcolm A. Franklin, son of Cornell S. Franklin; and, third, as to whether or not any inventory, appraisement, and bond should be required of her, in view of the provisions of the will that the executrix should act without giving any bond and should not be required to make any report to any court.

Upon the final hearing of the cause, the court entered a decree granting the relief prayed for in the petition of the minor remainderman, and ordered the inventory, appraisement, and bond filed by the executrix to remain in full force and effect, and construed the will as granting to Miss Mattie Lou Brown only a life estate in the property bequeathed, that is, that she is entitled to the enjoyment of the income from said estate during the term of her natural life, and was not entitled to expend any of the corpus of the said estate, and that at the death of the said Miss Mattie Lou Brown, Malcolm A. Franklin, son of Cornell S. Franklin, was entitled to the entire corpus of the estate, as shown by the inventory filed by the executrix. From this decree, the executrix prosecuted this appeal, and the assignments of error present for decision two questions: First, what estate was granted Miss Brown by the terms of the will? And,

second, was the court below justified in requiring an inventory and bond of the executrix?

The relation of the parties to the testator appears from the pleadings and the proof offered at the hearing. For many years prior to the death of Mrs. Franklin, mother of the testator, Miss Mattie Lou Brown lived in the home of Mrs. Franklin, practically as a member of the family, which consisted of the testator, his mother, his sister, and Miss Brown. During the last illness of the testator's mother, Miss Brown assisted in nursing and caring for her. After the death of his mother, the testator was appointed to an official position in Honolulu, and lived there for a number of years; Miss Brown and the testator's sister remaining in the old Franklin home until the death of the sister, which occurred while the testator was in Honolulu. During the last illness of the sister of the testator, Miss Brown was with her, and cared for her in a very devoted manner. About five years before his death, the testator returned to Columbus, Mississippi, and resided there until his death; and, at all times up to his death, was very devoted to Miss Brown. While in Honolulu, the testator lived for more than a year in the home of the mother of the petitioner, Malcolm A. Franklin, who was his grandnephew, and he was very fond of this child. Under these circumstances as to the relationship of the parties, the testator executed his will about two years before his death.

The first clause of the will reading, "I give and bequeath to Miss Mattie Lou Brown my property both real and personal," standing alone and unmodified, would undoubtedly have given to Miss Brown an absolute title to all of the testator's property with the right to expend the corpus thereof as well as the income therefrom. After simply identifying Miss Brown as a resident of Columbus, Mississippi, the next sentence of the will proceeds to expressly define and limit the estate to be left to her. It is therein provided that she is to have and enjoy the income from all the testator's property until

her death, and by this provision the estate that otherwise would have been granted by the first clause of the will was necessarily reduced to a life estate. If the testator intended for Miss Brown to take an absolute estate, then this reference to the enjoyment of the income "until her death" is entirely superfluous, and, to reach the conclusion that he so intended, it is necessary to disregard this provision that she should have the enjoyment of the income until her death. The rule is that a bequest of the income of personal property is a gift of a life estate; and the provision of this will that Miss Brown should enjoy the income from the property must be construed in its relation to the other provisions of the will, and, when this is done, it seems manifest to us that the testator intended to grant, and has granted, to Miss Brown only a life estate in the property.

In the next sentence of the will the testator provided that upon the death of Miss Brown "all the property will be given to my great nephew, Malcolm A. Franklin, son of Cornell S. Franklin." The appellant contends that the use of the words "will be given" instead of "shall be given," renders this provision precatory rather than mandatory, and also contends that it was the purpose and intention of the testator to give to Miss Brown a life estate, with full charge and control thereof, and with the right to encroach upon the corpus of the estate at her will and pleasure, and that at her death the corpus of the estate, or such portion of it as might remain at that time, should go to the remainderman, Malcolm A. Franklin. It may be true, as contended by counsel, that, according to strict grammatical rules, the phrase "will be given" is hortatory, and the mandatory phrase "shall be given" should have been used if it was intended that a vested remainder should thereby be given testator's grandnephew, but it is generally recognized by grammarians that there is much confusion in the use of the words "shall" and "will;" and, in the case at bar, we must determine the meaning and effect of this phrase

by a consideration of the context and all the provisions of the will, and determine therefrom, if possible, the intention of the testator. When so considered, we think the direction that, upon the death of the first taker, "all the property will be given to my great nephew," is more than mere words of desire, but is testamentary, and declares the ultimate disposition to be made of all the testator's property; and we find nothing in the will in controversy which gives to the life tenant the right to diminish the corpus of the estate by encroachment or otherwise. In volume 2, Alexander on Wills, p. 1579, it is said: "Words of desire, or other similar expressions, when used for the purpose of declaring the manner of the disposition of the testator's property after his death, and not as a request or prayer directed to a devisee or legatee concerning the devise or legacy given him, are words commanding disposition and are testamentary in character. They are not precatory, but of positive direction and binding upon the court, in the distribution of the estate;" and this doctrine is applicable here. We conclude, therefore, that by the terms of the will Miss Brown was given a life estate in all of testator's property, with no right of encroachment upon the corpus thereof, and that his greatnephew, Malcolm A. Franklin, took a vested remainder therein, the possession and enjoyment of which is postponed until the death of the first taker.

The appellant next contends that the court below erred in requiring an inventory and appraisement to be made, and in requiring the executrix to execute a bond for the faithful performance of her duties, the contention of counsel on this point being that since, by the express terms of the will, the testator relieved the executrix of the duty of giving a bond or making any report to any court, the court was without the right or authority to require such inventory and bond. In passing upon this assignment, we shall first consider the action of the court in requiring an inventory of the estate. The appellee

contends that, in view of section 2039, Code 1906, section 1779, Hemingway's 1927 Code, which provides that, after appointment as such, an executor or administrator shall return an inventory of the estate, verified by oath, a testator cannot by will dispense with the making of an inventory, and there is much authority to support the view that, where the statute requires an inventory, it is against public policy to permit a testator to so interfere with the forms of procedure established by law, or so remove the barriers designed to protect estates from misappropriation.

We do not deem it necessary, however, to here pass upon the contention of respective counsel in that regard, for the reason that the executrix has fully complied with the order of the court to make and file an inventory of the estate. This inventory is verified by her oath, and presumably reflects the truth, and there is no conceivable injury or prejudice that could result to the executrix by reason of this inventory remaining as a record of the court which granted to her letters testamentary. The importance of an inventory to the remainderman and to the life tenant, where the executrix and life tenant happen to be different persons, is well illustrated by the case at bar when it is remembered that the inventory shows that the estate consists solely of stocks, bonds, jewelry, and money, most of which was deposited in a lock box to which only the executrix had access after the death of the testator. Upon the granting of letters testamentary, the executrix was entitled to the sole possession of all these securities and other personal property, and, in the absence of an inventory, the nature, extent, and value of the estate may have possibly rested in her knowledge alone, rendering fraud, misappropriation, or dissipation of the property easier and less liable to detection. Where there is no inventory, and the nature, extent, value, and location of an estate consisting principally of stocks, bonds, and jewelry rest solely in the knowledge of an executor, it is easy to conceive of serious difficulties

that might confront a remainderman in securing his proper interest in an estate in the event of the death of the executor.

In support of the contention that the court erred in requiring the executrix to execute a bond, appellant relies principally upon the cases of Martin v. Martin, 69 Miss. 315, 13 So. 267; Hill v. Godwin, 114 Miss. 324, 75 So. 122; Rife v. Rife, 154 Miss. 529, 122 So. 739. In each of these cases, there was involved the right to require the legatee for life to give security for the protection of the remainderman's interest, and it was held that to the general rule that, upon proper showing being made that the bequest will be wasted and lost, such security will be required, there is a well-recognized exception of cases where the will shows a clear intention of the testator to pass the bequest itself to the legatee for life and to require no security from such legatee for the protection of the remainderman's interest. In the case at bar, the right to require a legatee for life to give security for the protection and interest of the remainderman is not involved, but there is involved the right of the court to require an executrix to execute a bond to truly and faithfully execute the will and discharge the duties required of her by law; consequently, the three cases above mentioned and relied upon by counsel, while persuasive, are not necessarily controlling.

Section 2011, Code 1906, section 1751, Hemingway's 1927 Code, provides in part as follows:

"If the testator, by will, direct that his executor shall not be required to give bond, then none shall be required, unless the court or the clerk, at the time of granting the letters or afterward, shall have reason to require bond, in which event it shall be the duty of the court or clerk to require bond with sufficient sureties; and if any creditor of such testator petition the court or the clerk in vacation, under oath, stating his claim, and that he believes he is in danger of losing his demand, or some of it, by the bad management of said estate or by the per-

sonal insolvency of the executor, such executor, having had five days' notice of the petition, shall be required to give a bond with sureties, to be approved by the court, or clerk in vacation, payable to said creditor, in a sufficient sum to cover his legal demand, and conditioned to save him from all loss by reason of any act or omission of such executor; but instead of such bond, the executor may give bond as if he had not been relieved from it by the will.''

The appellant contends that this section is entirely for the benefit of the creditors, but we cannot agree with this construction of this statute. The provision for the protection of creditors is wholly separate from the other provisions of the statute. The first provision is general, and provides that, when the will so directs, no bond shall be required of an executor, unless the court or the clerk, at the time of granting the letters or afterwards, shall have reason to require a bond, in which event it shall be the duty of the court or the clerk to require bond. It will be noted that it is made the duty of the court or clerk to require a bond at the time of granting letters, if there be reason so to do. Necessarily, this has no reference to a creditor's petition based upon an allegation of danger of loss by reason of bad management of the estate or the personal insolvency of the executor. This first provision of the statute has reference to a bond conditioned generally for the faithful performance of the duties of the executorship, while it is expressly provided that an executor may satisfy the demands of a creditor for a bond by giving a bond payable to the creditor in a sufficient sum to cover his legal demand and conditioned to save him from loss by reason of any act or omission of such executor. This section clearly recognizes the right of a testator to waive the executor's bond, but this is a qualified right, subject to the power to require a bond at the time of granting letters testamentary, if the court or clerk, ''shall have reason to require a bond.'' Consequently, it only remains to consider

whether or not, upon this record, we may hold that the court below had no reason to require the executrix to give the bond.

At the time this bond was required of the executrix, the will had not been construed by any court, and the executrix was asserting an absolute estate in all the property bequeathed, or an unlimited right to encroach upon the corpus thereof, and she was exercising, or had exercised, an assumed right to dispose of certain parts of the property in accordance with alleged oral directions of the testator made prior to his death. The court below heard the detailed testimony as to the nature of the property, the facility with which it could be moved, and its identity lost, the relationship of the parties, and all the surrounding circumstances, and declined to release the bond which had been previously executed; and we are unable to say that it is manifest that it erred in so doing.

The decree of the court below will therefore be affirmed.

Affirmed.