## Bell et al. v. Dukes.

(En Banc. Nov. 17, 1930. Suggestion of Error Overruled December

10, 1930.)

[130 So. 734. No. 28683.]

**D. C. Bramlette,** of Woodville, for appellants.

**Jones & Stockett,** of Woodville, for appellee.

**Ethridge, J.,** delivered the opinion of the court.

Mrs. M. W. Dukes filed a bill in the chancery court of Wilkinson county for a partition of certain lands, claiming title through the will of Nathaniel Bowren, which reads as follows:

"I, Nathaniel Bowren of Wilkinson County, State of Mississippi, do make and ordain this my last will and

testament, revoking any and all other testamentary disposition by me heretofore made. My funeral and testamentary expenses, including those of my last illness, are first to be promptly paid, then all other of my just debts. I give and devise to my wife, Joanna Bowren, for and during her natural life, my home farm in said County of Wilkinson, containing 13 acres, bounded on the North, East and West by lands of Glass and South by lands of Kingsbury and the Baptist Church lot. Also all the household and kitchen furniture, farm stock, cattle, horses and hogs, vehicles, utensils &c, which at my death may be in or about my homestead. Also to my wife, Joanna, I give all other property, real and personal, that I may be possessed of at my death, during her natural life. At the decease of my wife, Joanna, then and thereupon, the realty and personalty in this item bequeathed to her for life, are to belong to her daughter (by a former marriage) Leonora C. Miles, for and during the natural life of the said Leonora C. Miles. Then at the death of Leonora C. Miles, if she shall die without issue, the realty and personalty in this item devised shall belong to George and Rafael, the children of Briton A. and Nancy Price. My executors are, if practicable, to keep the furniture, stock and C. aforesaid on the said farm, to be used to the best advantage for the support of my wife, unless unavoidable for the payment of my debts, they are not to withdraw any of the personalty embraced in this item, but permit my said wife as owner for life to use, control and manage as may to her seem best, and after her death, the same shall be accorded to the said daughter, Leonora —I nominate and appoint Joel Glass of said county Executor of this my last will, of him I require no security.

"In witness whereof I have hereunto set my hand and seal this seventeenth day of August, A. D. 1866.

"NATHANIEL BOWREN. [Seal.]"

She alleged that Leonora C. Miles first married one McCutchen, and that by said marriage she had one son

only, J. S. McCutchen; that upon the death of said Mc-Cutchen she married George Price, and that by said marriage she had children and issue as follows: complainant in the court below, Mrs. M. W. Dukes and Isaac Price; that when the said George Price died the said Leonora C. Miles then married George B. Ebey, and that of this last marriage there were no children. She alleged further that J. S. McCutchen, the son of Leonora C. Miles McCutchen, died prior to her death, and left a number of children whose names are set forth in the caption of the bill and who were said to be made defendants to the bill; that Leonora C. Miles McCutchen Ebey died on or about August 1, 1927. Joanna Bowren died on or about August 26, 1873. It was also alleged that J. S. McCutchen, the son of Leonora C. Miles McCutchen, during his lifetime, conveyed a portion of the property to other persons named in the bill.

The heirs at law of Nathaniel Bowren are not named in the bill, nor are they made defendants thereto. In the caption of the bill various defendants are named, several of whom are nonresidents of the state, but the record does not show any publication for the nonresident defendants shown in the caption of the bill.

There is a decree pro confesso which was taken against J. S. McCutchen, R. B. McCutchen, H. L. McCutchen, Mrs. Catherine McKey, Mrs. Eola Westmoreland, D. P. McCutchen, and I. M. McCutchen; but this decree did not recite that any publication had been made in accordance with the law, merely reciting that the court being satis-fied that said motion should be sustained, "it is therefore ordered, adjudged and decreed that the motion be and same is hereby sustained."

The case was tried on an agreed statement of facts reciting as follows:

"1. That a determination of this cause depends upon a construction of the will of Nathaniel Bowren of record

in will book No. 2 at page 254, et seq., which is here referred to, and to be taken as a part of this agreement.

"2. That if under said will Leonora C. Miles became vested with a life estate and her issue, in the event she died leaving issue, became vested with the remainder in fee that in that event complainant owns one undivided third interest in said lands, and that defendant Isaac P Price owns one undivided one-third interest in said lands, and the other one-third interest is owned by the Mc-Cutchen heirs named in the bill of complaint, and that no part thereof is owned by any other defendants.

"3. It is agreed and admitted that Nathaniel Bowren owned the fee simple title to said lands described in the bill of complaint at the time of his death; that his wife, Joanna Bowren, survived him and died in August, 1873. That Leonora C. Miles died on August 1, 1927, leaving the following issue namely, complainant, a daughter, and defendant Isaac P. Price, a son, and the McCutchen heirs named in the bill of complaint, being children of a deceased son, Joe McCutchen. That Leonora C. Miles had no other children or issue except as those named.

"4. It is agreed and admitted that in the event of a sale of said lands that a partition of the same in kind cannot be had and is impracticable and that a sale of all of said lands and division of the proceeds of sale would best promote the interests of all parties."

This agreement was signed by the attorneys for the complainant, H. C. Leak, solicitor for Isaac Price, and D. C. Bramlette, solicitor for all other defendants except the McCutchen heirs.

As parties to a partition suit must stand upon their title, in order to maintain a partition suit it is necessary to determine whether or not the children of Leonora C. Miles took any interest under the will upon her death. They are not expressly given any estate under the terms of the will. It is necessary to determine whether any estate arises by implication.

We think it is perfectly clear that the wife of the testator, Joanna Bowren, took only a life estate, and that Leonora C. Miles, at the death of Joanna Bowren, took only a life estate. The language relied upon to create an estate by implication in the children of Leonora C. Miles is: "Then at the death of Leonora C. Miles, if she shall die without issue, the realty and personalty in this item devised shall belong to George and Rafael, the children of Briton A. and Nancy Price."

There is nothing in the will to indicate what relation George and Rafael were to the testator, nor what relation they were to Leonora C. Miles. There is nothing to be gathered from the will or by any of the surrounding circumstances shown in the pleadings or the agreed statement of facts that make it necessary to create an estate by implication in the children of Leonora C. Miles to give effect to the testator's intention. It is true that the intention of the testator is to be determined from the will as a whole, and that every part of it must be construed together in arriving at a conclusion as to what the testator's intention was. There is nothing in the record showing the surroundings of the testator when he made the will, nor any purpose or intention in the will to create an estate by implication.

In Jones v. Carey, 122 Miss. 244, 84 So. 186, it was held that in order for a will to be effective to vest the fee, it must contain sufficient language and sufficient purpose obtainable from its language, to dispose of the fee, or else the heirs of the testator will take the fee by inheritance, and not by the will, and that while the court will give effect to an instrument disposing of an estate, where such instrument manifests the intention to dispose of all his property, yet it cannot reform a will, so as to give it validity, and cannot, by construction, write into wills provisions which the maker may be supposed to have attempted to make but not evidenced by the terms of the instrument.

The appellee, Mrs. M. W. Dukes relied upon the case of Ball v. Phelan, 94 Miss. 293, 49 So. 956, 957, 23 L. R. A. (N. S.) 895, in which case the devise construed was as follows:

"Item 2nd: I will and bequeath to my daughter Julia T. Hunt, during the time of her natural life, the other half of my property, both real and personal, to be hers, free from the control of any future husband, and also free from the debts of any future husband, he is to have no title by courtesy, or any other title by reason of her death, or is to inherit it through the death of any child or children they may have or in any other manner whatever.

"Item 3rd: In case my daughter Julia should die without child, or in case the child or children should die before marrying or became of age, then the whole property given to my daughter Julia, all for her life, should go to Bettie Hunt Selden, and should she die before she marries or becomes of age, then one-half should be the property of Julia Moore Driver, and other one-half shall be divided between the children of my sisters, Maria L. Joiner and my sister, Leona E. Thompson, and the said Julia Moore Driver shall receive the property only for her natural life, free from the debts and contracts of any present or future husband and should at her death follow the same line of descent as the first mentioned half of the property."

The court there held:

1. That the estate vested in a person under a devise to him for life, with remainder over on his death without issue, is a life estate only.

2. That in order for a devise to arise by implication, the probability of an intention to make the gift must appear to be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind.

3. That no devise by implication to the issue of a life tenant arises under a devise to him for life, with remainder over on his death without issue, unless the attendant circumstances clearly indicate that the testator intended that the issue of the life tenant should take.

4. That the attendant circumstances there (carefully pointed out) clearly indicate that the testator intended that the issue of the life tenant should take.

A review of the authorities there made, as well as a review thereof made in Bond v. Moore, 236 Ill. 576, 86 N. E. 386, 19 L. R. A. (N. S.) 540; Kales Cas. on Future Interests, 553, discloses that this holding is supported by the English and by weight of the American authorities.

That Ball v. Phelan, supra, so decided clearly appears from the following excerpts from the opinion. After a review of the authorities on the general question of a devise by implication, the court quoted from Bishop v. McClelland's Executors, 44 N. J. Eq. 450, 16 A. 1, 2, 1 L. R. A. 551, that:

"A bequest may undoubtedly arise from implication, but, to warrant the court in so declaring, there must be something more than conjecture to support its declaration. The implication must be a necessary one. The probability of an intention to make the gift must appear to be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind. A construction in favor of a gift by implication should never be adopted, except in cases where, after a careful and full consideration of the whole will, the mind of the judge is convinced that the testator intended to make the gift."

The court then proceeds:

"Let us now, in the light of these general principles, come to a particular consideration of the authorities relied upon on both sides, and, first, as to the authorities which support the contention that there is here a remainder in fee to Julia's children by implication."

After reviewing these authorities, and holding that Julia Hunt took only a life estate, the court said:

"What, then, is the law where the first taker, like Julia, gets only a life estate? Mr. Jarmon says, in the passage above quoted, on page 556, in the first volume of his great work, as follows: 'And even where the language of the will necessarily confines the interest of the parent to his life, the children will not generally be held to take by implication; it is extremely probable that the testator intended a benefit to them; but si voluit non dixit. But it seems that in such a case the court will lay hold of slight circumstances to raise a gift in the children, and thereby avoid imputing to the testator so extraordinary an intention as that the devisee or legatee over is to become entitled if the first taker have no child, but that property is not to go to the child, if there be one, or its parent. . . .' And this rule has been steadily followed in many cases of great consideration. . . . What, now, are the considerations or circumstances which the court in this case should look to as showing, since Julia's estate was limited strictly to life, a remainder in fee by implication in the children of Julia?"

The court then proceeds at some length to set out the circumstances which clearly indicate that the testator intended that Julia's children should have the property after her death.

The circumstances so indicating were there found by the court in the will, and it may be that they should always be limited thereto—as to which we are not called upon to express an opinion. But here the will is barren of any language throwing any light whatever on the question, and none of the circumstances surrounding the testator that would throw any light on his intention are disclosed by the record.

The opinion in Ball v. Phelan, supra, was very carefully written, and much of it would have been superfluous, had the court intended to hold that where, in a will there

is a devise to A for life, and should he die without issue, then to B, the words "should he die without issue," are by themselves, without assistance from other parts of the will, sufficient to create a gift by implication to A's issue.

But Ball v. Phelan is not the only case in which this court has held that no devise by implication to the issue arises under a devise of a life estate in property to one with remainder over on his death without issue.

In Jones v. Carey, 122 Miss. 244, 84 So. 186, 187, supra, a testator devised annuities to be paid out of the rents of his lands to his two children, Minnie May Street and Bessie Gray Street, and provided "that should either of the above children die without issue the other child or her heirs shall inherit the entire interest of the deceased one. . . . And should both die without issue, the whole estate shall go to Mrs. Sarah J. McCorkle and her heirs share and share alike."

Both Minnie May Street and Bessie Gray Street died leaving issue, and after their death their children sued the persons in possession of the land in ejectment for the possession thereof, claiming it as purchasers under the will of their grandfather above set out.

The court, after stating that it would not, "by construction or amplification, write into a will provisions which the maker may be supposed to have attempted to write into it," said, "The instrument before us is wholly insufficient to devise the fee from the maker into the grandchildren," and that the case was easily distinguishable from Ball v. Phelan, for there "it was perfectly manifest that the testator . . . did intend to vest it [the fee] in the remaindermen."

We are therefore of the opinion that no estate by implication arises in favor of the children of Leonora C. Miles. The court below was in error in holding that one did arise.

It is doubtful, from the record, whether the nonresidents, against whom a decree pro confesso was attempted

to be taken, were before the court. They were necessary parties, and a partition suit without the necessary parties is void; but, as we have reached the conclusion that the complainant had no title or interest to warrant the suit filed by her, it is not necessary to deal with this view of the case, as the decree of the court below must be reversed and the bill dismissed, because complainants had no title to the property sought to be partitioned.

Reversed and dismissed.

**Griffith, J.,** delivered the dissenting opinion.

It is a cardinal rule in the construction of a will that, if possible, effect will be given to every word and clause. Wills are customarily drawn in the briefest language, and in the majority of cases without accurate knowledge of the technical terms of the law. The presumption is, therefore, that every word or phrase was intended to have some real and substantial meaning in accordance with the ordinary interpretations of language. Consequently, no word or clause is to be rejected unless the part to be stricken (1) is contrary to law, or (2) is impossible of execution, or (3) is in irreconcilable conflict with a superior provision, or (4) is meaningless. These four propositions lie at the very foundations of the law of wills and are supported by every text and every leading case that is found in the books anywhere.

The words, the clause, here in question are those which occur in the paragraph next following that wherein a life estate is devised to Leonora. The language is: "Then at the death of Leonora C. Miles, *if she shall die without issue,* the realty and personalty in this item devised shall belong to George and Rafael . . . Price." We italicize the particular six words here under consideration. In order that appellants may prevail, it is necessary in ultimate effect to strike those six words out of the will. This manifestly cannot be done because they are contrary

to law, or because they are impossible of execution, or are in irreconcilable conflict with a superior provision. It therefore follows that when stricken, it must be on the ground that they are substantially meaningless. The answer to that proposition is borne upon the plain and simple face of the words themselves, looking to the context within which they stand. The majority opinion does not make so bold as to contend that they have no meaning, as manifestly it could not be so contended. Nevertheless, the opinion in effect simply strikes them out, to which we say, with all deference, that no court ought to take any such liberties with any will, about which the duties of courts are so solemn and sacred.

The question here involved came squarely before this court in Ball v. Phelan, 94 Miss. 293, 49 So. 956, 957, 23 L. R. A. (N. S.) 895, and the court, much impressed, as it must have been, with the confusion existing among reported cases, attempted to settle the question in this state by an elaborate opinion by Chief Justice WHITFIELD, which swept the field of American and English reports. In that case, the second item of the will devised to the daughter, Julia Hunt, a life estate, and in the third item it was provided: "In case my daughter Julia should die without child," the whole property should go to Bettie Hunt Selden, etc. The court held that the children of Julia, on her death, took the estate as devisees by implication. The question that the court had before it there is the exact question that is before us now, and the result as ordered in that case is the result that should be ordered in this case.

But the majority, apparently not content to abide the result in the Ball v. Phelan case, has undertaken to distinguish or qualify it, and so to do have been driven to take quotations and summaries from it, which when examined are found to be passages used by the court in illustration of the views of other courts, and not as setting forth precisely the views of the court in Ball v.

Phelan. The opinion in that case went at length into a review and comment upon cases of various shades of holdings, but at the very outset of the opinion the court gave as the "best statement on this point we have found is that of Judge FINCH in the Matter of Vowers, 113 N. Y. 569, 21 N. E. 690, where he says: 'The rule of con-struction which seems to have prevailed is that the in-ference need not be irresistible or such as to exclude any doubts possible to be raised, but must, nevertheless, be such as to leave no hesitation in the mind of the court, and must rest not upon mere conjecture. The intention must be clear so that no other reasonable inference can be made.'" That was the "best statement" with which the court began the opinion, and after thirty pages of review and comment on the authorities everywhere, the court concluded with the following language: "On the whole case, it is clear from the entire frame of this will, looking at all its parts and giving every word its due force, that this testator intended these children of Julia to take a remainder in fee. The implication is necessary from the whole scheme of the will; no other rational pur-pose can be assigned to the testator." So here in the case before us, what other rational purpose can be ascribed to the testator in the use of the words "if she shall die without issue," than the purpose that if, on the other hand, she died with issue her children should take the remainder in fee, exactly as was held in Ball v. Phelan? Or to take the opening test stated in Ball v. Phelan, what other reasonable inference can be made? These ques-tions inescapably present themselves on the face of this will, and yet they go unanswered by the majority opinion, apparently on the theory that if the words of the will which present these questions are turned around or stricken out, then they will need no answer.

In the case of Ball v. Phelan attention was called to the fact that "it is impossible to read this will without seeing that it was the manifest purpose of the testator

to dispose of his whole estate, and not die intestate to any part thereof;'' and that is exactly the will as presented in this case. The court there said nothing in respect to whether the conditional devise over to Bettie Hunt Selden would violate the two-donce statute, for it was a matter of the testator's intention with which the court was dealing. And so here in respect to the like conditional devise to George and Rafael Price. Clearly under this will George and Rafael, as expressly shown by the will, were intended to take in fee, but would take only upon the event that Leonora should die without issue. So, the result under the majority holding in this case is that, although the intention of testator to dispose of his whole estate, and not die intestate to any part thereof, is clear from the entire will, yet the very clause that finally makes that intention clear is now turned around so as to cause the testator to die partly intestate.

The subject could be pursued into several other features, but it would seem that the foregoing is sufficient to challenge the attention of bench and bar, and to invoke the correcting process of time as in the future this matter may come again into view. In Ball v. Phelan with the rather simple provisions of the will there before the court, and which in material respects is a duplicate of the one now before us, there was presented a plain result which if adhered to would have been of reliable value to our jurisprudence; but all the learning and industry displayed in that case has apparently amounted to but little, and the question, there attempted to be settled, has by the present controlling opinion been again cast upon an uncertain sea, without dependable chart or compass. Judge ANDERSON joins in this dissent, and in the view that, both upon principle and precedent, the decree of the chancellor should be affirmed.