OLD LADIES' HOME ASS'N., et al. *v*. MILLER.

Apr. 6, 1953

No. 38666 26 Adv. S. 31 63 So. 2d 786

188

*Green, Green & Cheney,* for appellant, Old Ladies Home Ass'n.

*Cecil F. Travis* and *Dan McCullen,* for appellant, Old Men's Home.

*Norman B. Gillis, Jr.,* for appellee.

ETHRIDGE, J.

This case involves the interpretation of a holographic will and, in particular, the question of whether a gift expressly for life, with a direction to sell certain rings of testatrix, and at the death of the life tenant "all remaining" of property is willed to remainderman, implies a power of disposition in the life tenant of both personal and real property.

On October 31, 1950, Mrs. Georgia Miller Byrne executed a will wholly in her own handwriting, as follows: "Georgia

Oct. 31, 1950

To whom it may concern.

I, Georgia Miller Byrne, of sound and sane mind do will and bequeath all of my worldly goods to my Beloved brother, Andy Thompson Miller, for duration of his life time, my rings to be sold, with exception of old fashion cluster *wich* I have given to Lewis A. Myers, a dear friend, The money from rings to be used for marker for my grave—*worded only* Georgia Miller Byrne, Beloved daughter of Elizabeth & Elisha Miller, at death of my brother Andy Thompson Miller, all remaining of

property and effects are to be sold and proceeds given equally div*ed* between Old Ladies Home Jackson, Miss. and Old Men's home Madison, Miss. in loving memory of my Beloved Mother & Father, a check written to A. T. Miller and signed so can check out balance in bank.

All my love,

Georgia''

The record does not contain the ''check written to A. T. Miller and signed'' by testatrix, which is referred to in the last part of the will. However, the briefs state that testatrix attached to the will a check drawn on her bank account payable to the life tenant, Andy Thompson Miller, her brother, and signed by her, but with the date and the amount left blank.

Mrs. Byrne, the testatrix, died on November 16, 1950, sixteen days after the execution of her will. In July 1951, the will was admitted to probate in the Chancery Court of Hinds County, claims were filed against the estate and were paid under court orders, and the estate was administered with the exception of the filing of the final account of Andy Thompson Miller, Administrator, c. t. a. A petition was filed by Miller as life tenant for construction of the will. It averred that under the terms of the will the testatrix made a direct bequest to him of all monies on deposit, and that the will further gave him a life estate with a power of disposition of the testatrix' real and personal property, with the exception of the rings, and that the Old Ladies' Home and Old Men's Home received under the will a remainder estate of any property which might be unconsumed by the life tenant. The Old Ladies' and Old Men's Home Associations filed answers to this petition. They stated in substance that the effect of the will was to vest in Miller only a life estate in the money and personal and real property, with no power of disposition in him, and that the Old Men's and Old Ladies' Homes were granted a vested remainder

in all of this property at the death of the life tenant Miller.

The parties entered into a stipulation of certain facts. The testatrix' husband had died in May 1950. There were no children of this marriage. Mrs. Byrne's father and mother were also dead, and Andy Thompson Miller, the life tenant under her will, would have been her sole heir if she had died intestate. Prior to the death of Mr. Byrne, he was engaged in the business of restaurant keeper and had been employed by various hotels over the south. In August 1948, Mrs. Byrne purchased a residence in the City of Jackson for a price of $12,500.00. On October 24, 1950, she borrowed from an insurance company the sum of $7,700.00, and for security gave that company a deed of trust on this residence. The monthly payments on the deed of trust are approximately $60.90, for a period of fifteen years. The briefs of counsel reflect that this property contains three apartments, being a "three-plex", and its value is $12,000.00. Before the death of Mrs. Byrne, the two apartments in this house which were rented by her brought in a rent of $100.00 per month. Apparently Mrs. Byrne occupied the other apartment. The value of the household and kitchen furniture in the residence was about $1,000.00, and consisted of one dining room suite, two bedroom suites and ordinary kitchen equipment.

At the death of testatrix, her bank account was in the sum of $3,038.91. After various expenditures were made by the administrator following her death, the balance on deposit was $1,147.15. State, county, and municipal taxes for 1950 were $126.49, and for 1951, $238.76. Insurance on the building of $10,000.00 requires an annual premium of $55.00. The residence is in fair condition, but essential repairs will cost about $385.00.

Mrs. Byrne's only brother, the appellee, Andy Thompson Miller, lives in McComb, Mississippi, and at the date of testatrix' death was fifty-two years of age. He works

for a railroad as a relief clerk and over a period of the past fourteen years has earned an average monthly salary of $174.89. When he reaches the age of sixty-five, he can retire on a monthly pension of $75.00. Miller is married and has one child, who herself has been married since 1947. He owns a home in McComb in which he and his wife live. Its cost in 1929 was $3,800.00. There is a deed of trust on it for $650.00. Since 1936, he has been ill from various causes, as has his wife. The total amount of their doctor's bills since January 1949 is $1,808.00, of which he has paid $533.00. It was stipulated that the testatrix was fully aware of the extent of the illness suffered by Miller and his wife and of the income of her brother; and that these problems were often discussed during testatrix' frequent visits with the Miller family.

The chancery court's decree of May 21, 1952, upon the foregoing record, adjudicated that the will had the following effects:

(a) A direct bequest without limitation to Miller of all monies on deposit; (b) a life estate with a power of disposition in Miller of all of testatrix' personal and real property excepting the rings; and (c) "a vested remainder in the proceeds of the sale of all assets, real and personal, which remain following the death of the life tenant, is vested in the Old Men's Home and the Old Ladies' Home." The decree further provided that Miller as life tenant could have and manage all of the property as in his judgment appeared best, and that he was vested "with a general power of disposition over the same with full power to convey in fee simple absolute any of said property for any purpose other than for the purpose of squandering said property or keeping the same from vesting in the remainderman after his death."

We have concluded that the chancellor was correct in holding that Miller was given an unlimited, direct bequest of the testatrix' money, and a life estate in the

real and personal property, with remainder in appellants, but that he erred in implying from the will and the surrounding circumstances that Miller was also vested with a power of disposition of the real and personal property.

After claims and obligations of the estate were paid, testatrix' estate had on deposit in a bank the sum of $1,147.15. We think that the cash represented by this bank deposit was intended by testatrix, under the terms of her will, to be bequeathed directly to Miller, with no restrictions on it.

This is clearly evidenced by the last sixteen words in the will: "A check written to A. T. Miller and signed so can check out balance in bank." The briefs state that testatrix attached to her will a check signed by her payable to A. T. Miller with the date and amount blank. Manifestly this was in the mistaken belief that Miller, after testatrix' death, could fill out the check and withdraw the proceeds of her "balance in bank." Although this check has no testamentary effect as a bequest, it is relevant, circumstantial evidence of testatrix' intent. The quoted sentence in the last part of the will expressly says in effect that Mrs. Byrne wants Miller to be able to "check out balance in bank," that is, to have it. Moreover, the definition in the will of what is included in the remainder estate excludes a purpose that the money would be a part of it. When these features are considered along with the balance of the will, the intent is manifest that Miller should receive a direct grant or bequest of the balance of testatrix' cash in her bank account. This was the holding of the chancery court, and the decree below to that extent is affirmed.

With reference to the personal and real property, we think that the chancery court was in error in implying a power of disposition in the life tenant. The will first expressly gives Miller only a life estate in "all of my worldly goods." Such a phrase in this context refers to

all of testatrix' property, both real and personal. 57 Am. Jur., Wills, Section 1343. The will then provides that all of her rings, with one exception, shall be "sold." It then provides that "at death of my brother, Andy Thompson Miller, all remaining of property and effects are to be sold and proceeds given equally" to appellants, "in loving memory of my beloved father and mother." The phrase "all remaining of property and effects" refers, we think, to all of the property remaining in the estate after the sale of the rings and after use of the same during the life estate. In other words, testatrix bequeathed the money to Miller and directed that her rings be sold, and then stated that at the death of her brother the rest of the property other than the rings would go to the remaindermen.

The testatrix manifestly had two principal purposes in executing her will. First, she wanted to leave her money and some of the benefits from her property to her brother, the appellee, and secondly, she wanted to create a memorial "in loving memory of my beloved mother and father." If she had desired that appellee would receive her entire estate she would not have made a will, because he was her sole heir, and in the absence of a will he would have inherited all of her estate. Hence we must conclude that she intended that her brother would receive less than a full interest in the property. But at the same time, if she had intended that he would have a power of disposition of all of her property during his lifetime, we think that she would have known that, in the financial situation which the record reflects that appellee is, it could be predicted with practical certainty that appellee would exercise the power of disposition, and that, therefore, one of the two principal purposes of her will, to create a memorial to her mother and father, would be thwarted. To imply a power of disposition in the life tenant would be to imply a power to

destroy the second principal purpose of testatrix as set forth in the latter part of her will.

 It is generally said that in order for the court to imply a power of disposition, it must be necessary to carry out the manifest intention of the testator. A power of disposal accompanying a life estate is limited to such disposition as a life tenant can make, unless there are other words clearly indicating that a larger power is intended. Anno., 108 A. L. R. 542, 543; 33 Am. Jur., Life Estates, Remainders, etc., Section 240. Another applicable rule of construction is that gifts by implication are not favored unless they are necessary to carry out testator's intentions. 57 Am. Jur., Wills, Section 1192, p. 782; Ball v. Phelan, 94 Miss. 293, 49 So. 956 (1909); Bell v. Dukes, 158 Miss. 563, 130 So. 734 (1930).

The only possible basis for implying here a power of disposition in the life tenant is from the use of the words: "all remaining", but in this context and under the foregoing interpretation an implication of such a power of disposition is not warranted. A fortiori this is true under the above-stated established rules of strict construction with reference to implied powers.

There has been a multitude of cases dealing with the power of a life tenant to consume the principal or corpus of the property by use of a power of disposition, in the absence of an explicit provision for encroachment. 33 Am. Jur., Life Estates, etc., Sections 235-241 and Annotations, 2 A. L. R. 1243, 1268, 1297, 1310; 108 A. L. R. 542 (1937), discuss numerous cases holding both ways. It is there stated that a careful analysis of the apparent inconsistencies in those decisions leads to the conclusion that each case of this nature involves a problem of will construction according to its own terms. Among the indicia of intention of a testator that the life tenant should have the right and power to use the corpus are expressions in a will indicating an expectation of possible diminution of a gift over. Appellee argues that

the phrase "all remaining" in the present will is an expression of such intent, but in view of the express grant of a life estate to Miller, with remainder in appellants, and our view that that phrase applies to the property other than the rings to be sold, no implication of a power of disposition can be drawn from this phrase in this particular will.

Other indicia of intention are said to be various expressions relating to the extent of dominion of the first taker over the property, and supplementary to that, by the fact that the gift to the first taker is a life gift for support and maintenance. 33 Am. Jur., Life Estates, etc., Section 236. But the present will reflects no description of any dominion by the life tenant over the property other than what a life tenant would normally have. Nor is there any statement whatever in the will which would indicate that Mrs. Byrne thought that the gift to the life tenant was for his support and maintenance. In view of the terms of the will, an inference of an intent to support and maintain Miller, made from his straightened financial circumstances, is not warranted. ▮▮ Although where the will is ambiguous the court can consider surrounding circumstances in order to ascertain testatrix' purpose, such circumstances should not be permitted to change the terms of the will by adding provisions to it.

Another significant fact in this will is that testatrix refers expressly to two occasions in which there would be a sale of her property. One of them was the sale of her rings, with one exception, presumably to be made as soon after her death as reasonably practicable. The other was a sale of her property and effects at the death of the life tenant. Hence testatrix was well aware that she could grant a power of sale. The fact that she did not give that power expressly to Miller is significant. She expressly provided for these two instances of sales, and by reference to these alone, she by inference excluded any other sale, under the rule of expressio unius.

Appellee argues that a power of sale should be construed to exist as to both personal and real property. This estate consists of both of those types of property. In that respect the courts have made certain distinctions, as stated in 3 Page, Wills, (3d ed. 1941), Section 1316, pp. 855-56: ''Some cases have made a distinction based on whether the term is used in a gift of realty or of personalty. Where the gift is of personal property, such cases hold that a gift over of what is left or what remains after the life estate does not confer a power of sale and use of the proceeds in the life tenant, in the absence of other indications of the testator's intent to do so, the term 'what remains,' or the 'residue,' and the like, being intended to show that the life tenant is not to be charged with loss due to shrinkage of investments, deterioration, or consumption by use. Where the gift is wholly of real estate, a power is implied in the life tenant to sell the property by a gift over of what is left on his death. Where the gift is of both realty and personalty, the tendency of such cases is to apply the rule for personal property, unless the personalty is so insignificant or of such character that the testator could have had in mind no means of diminution other than sale by the life tenant.''

To the same effect is 33 Am. Jur., Life Estates, etc., Section 237. Under this principle the gift over of ''all remaining'' property, even disregarding the prior provision for sale of the rings, did not confer a power of sale in the life tenant. That phrase has reference here to diminution of the remainder estate by deterioration and use of the furniture and other personal property and the real property, and not diminution by sale by the life tenant.

This Court has consistently applied the general rule that gifts by implication are not favored, and that in order to warrant an implication of a power of disposition, it must be necessary to effectuate a manifest intention of the testator. A good discussion of this

principle is in Smith v. Strickland, 139 Miss. 1, 103 So. 782 (1925). Howell v. Howell, 157 Miss. 15, 127 So. 566, (1930), although not directly in point, is persuasive of the result reached here. Jackson died testate. The will first provided for certain devises under stated conditions. Its pertinent provisions then stated: ''But should my son Robert die before my wife dies, then my said wife Lucy P. Jackson shall have and use the same as long as she lives, then at her death, all my property remaining shall be equally distributed between my brothers and sisters or their survivors. I hereby direct and set aside the sum of five hundred dollars for a monument to be erected at my grave.'' Testator left a thirty-six acre farm with a home on it and a personal estate of $9,172. The executor filed his final account, and the brothers and sisters of testator, the remaindermen, filed exceptions to it, contending that the executor should not be allowed to file a final account, but should continue in that office until the widow's death; that the widow was entitled only to interest on the proceeds of the personal estate and that she should be required to execute a bond for protection of the remaindermen. The widow contended that the will conveyed the estate in fee to her, and further that she was entitled to the use and enjoyment of it during her lifetime. This Court affirmed the holding of the chancellor that the widow was entitled to use the property during her lifetime, that the estate should be closed, and that the widow obtained only a life estate in the real and personal property. It does not appear that it was argued to the court that the life tenant had an implied power of disposition, so that issue was not expressly considered. However, the holding that the life tenant received only a life estate with a vested remainder in the brothers and sisters negatived any conclusion that the life tenant had an implied power of disposition, and to that extent the case is persuasive here. See also Brown v. Franklin, 157 Miss. 38, 127 So.

561 (1930). Cross v. O'Cavanagh, 198 Miss. 137, 21 So. 2d 473 (1945), is not relevant, because there the testatrix expressly gave to her three sisters and the heirs of another a fee simple estate, and then provided "if at the death of my sisters . . . what is left of my estate" will go to stated persons. The question was whether, after making a fee simple devise and bequest, a testatrix could validly thereafter limit the scope of the estate previously granted. The answer was in the affirmative. It was said that the sisters had a power of disposition, but such power did not have to be implied, since it is expressly included in the original grant of a fee simple estate. Moreover, other terms of the present will clearly differentiate it from the one in the *Cross* case.

For the foregoing reasons the decree of the chancery court is affirmed to the extent that it found a direct unlimited bequest of the monies to Miller, and a life estate in Miller with a vested remainder in appellants in the personal and real property. ▮▮ The decree is reversed to the extent that it found any power of disposition in the life tenant as to the personal and real property. ▮▮ We do not consider on this appeal the respective rights and duties of the life tenant and remaindermen, such as, for example, the prayer in the answer of the Old Men's Home for an apportionment of the mortgage obligation. This and other correlative rights and duties of the parties were not considered by the chancery court in the decree appealed from, and must await further adjudication by the trial court. The case will be reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed in part, affirmed in part, and remanded.

All Justices concur.