HUTTON *v.* HUTTON

No. 40768 May 5, 1958 102 So. 2d 424

*Watkins & Eager,* Jackson; *Canada, Russell & Turner,* Memphis, Tennessee, for appellant.

*Wm. Harold Cox,* Jackson; *J. B. Hutton, Jr.,* Mitchell-
ville, Maryland, for appellees.

ROBERDS, P. J.

The primary question involved in this case is the identity of one of the devisees in the will of Mrs. Rosalind Gwin Hutton, Deceased. By the will she devised one hundred and sixty-nine acres of land out of the Cooper five hundred and seven acre tract in Holmes County, Mississippi, to "Rosalind Gwin Hutton." Rosalind Gwin Johnson (nee Hutton), a daughter of testatrix, and Rosalind Gwin Hutton, a granddaughter of testatrix, each claim to be the devisee. The chancellor decided in favor of Mrs. Johnson, the daughter. The minor appeals to this Court.

■ ■ In our endeavor to decide the question we should place ourselves as nearly as may be in the position of testatrix when she wrote the will. Strickland v. Delta Investment Co., 163 Miss. 772, 137 So. 734; Slaughter v. Gaines, 220 Miss. 755, 71 So. 760. This includes a consideration of the circumstances surrounding the testatrix, the terms of the will itself and competent evidence extrinsic of the will.

The will was written wholly in the handwriting of the testatrix. It is dated July 13, 1951, but the testatrix

added three codicils thereto under dates of November 10, 1953, July 15, 1955, and July 19, 1955. She departed this life November 23, 1955.

The testatrix was an elderly widow. Her husband, the Rev. James Buchanan Hutton, had died in 1940. At the time she wrote the will she had five living children— Mary Ryburn McCutchan, Sam D. G. Hutton, James G. Hutton, Jr., Rosalind Hutton Johnson and Charlton D. Hutton. She had eleven living grandchildren. One grandchild is Susan Van Houten Smith, who is the child and only heir of Martha Gwin Hutton Thompson, Deceased. The five named children and Mrs. Smith, the granddaughter, were the heirs and the only heirs-at-law of the testatrix. She had ten other granchildren but their parents were living and these grandchildren were not heirs of the testatrix. The minor who appeals here is one of the granddaughters of the testatrix but not her heir. The minor was a little less than one year old at the time the will was written. She is the daughter of Sam D. G. Hutton and his wife, who have three other children. These four children are included in the ten grandchildren mentioned above.

At the time the testatrix wrote the will she owned certain lands in Holmes, Hinds, Madison and Rankin Counties, Mississippi. She possessed a small amount of personal property. Her personal possessions included many family relic and momentoes. The total value of her estate is about $45,000.

As to the terms of the will, she devised her lands, except as to some mineral rights, to Mary Ryburn McCutchan, James B. Hutton, Jr., Rosalind Gwin Hutton, and to the granddaughter, Mrs. Smith, who, as stated, was an heir of the testatrix along with the five children of testatrix. She did not devise any lands to Sam D. G. Hutton and Charlton D. Hutton. She did give to them certain mineral rights in lands. In her will she explained her action and reasons in these words: ''I am

making no land or cash bequests to my sons, S. D. G. Hutton and Charlton D. Hutton by reason of cash advances made to them; to S. D. G. Hutton for his business ventures from 1920 to 1939 inclusive, and to Charlton D. Hutton, from 1937 to 1950 inclusive.'' In a letter dated July 19, 1955, written by the testatrix to J. B. Hutton, Jr., she said she had changed her will as originally written except as to the special bequests, and then she quoted the statement which appears in the will to the effect that she had given no land or cash bequests to S. D. G. Hutton and Charlton D. Hutton. She then said in the letter: ''The mineral rights I willed to S. & C. equally with the rest.'' In that letter she expressed the apprehension that Sam would not like what she had done, and repeated as a reason therefor the fact that she had already advanced to Sam and Charlton ''* * * much more than the value of the property I have willed to any one of the rest of you.'' Charlton, the testatrix wrote, was satisfied with his omission as a devisee of the lands. Again, in a letter dated August 4, 1955, written by testatrix to J. B. Hutton, Jr., she said Sam D. G. Hutton had the Cooper place rented ''through '57'', and that his rent notes were held by a bank as collateral, and that Sam wanted her to ''sign a rent waiver each year.'' She objected to doing that and indicated she was not going to do so, and, as it appears from subsequent events, she did not do so. She also said in that letter that Sam was causing ''turmoil''. She said ''* * * he seems to (be) out for every material advantage he can get for his own children.'' In a letter dated June 8, 1955, the testatrix, discussing her dispostition of ''my Cooper place 509 acres'', referred to the devisees as children of the testatrix.

As to the designation in the will of the devisees in question she referred to Mrs. Johnson under different names, such as Rosalind Hutton Johnson, Rosalind Gwin Hutton, Rosalind Gwin, Rosalind Gwin Hutton Johnson

and Rosalind. This demonstrates that she did not always refer to Mrs. Johnson as Rosalind Gwin Hutton. She designated her by other names. Under a heading "Mementoes for my grandchildren" she referred to the minor as Rosalind Gwin Hutton, III. It is noted that she did not thus describe her as devisee of the land. It is admitted that this legatee is the granddaughter of testatrix. She gave to her grandchildren various family relics and mementoes but she did not give them any land or interest in any land other than to Mrs. Smith, who, as stated, is the heir of Mrs. Thompson, who was the daughter of the testatrix. In other words, it is apparent that she intended to give to her children and natural heirs all of her real estate. Indeed, in the above-mentioned letter of August 4, 1955, from the testatrix to her son, James B. Hutton, Jr., she said: "In my will I assigned definite parts of the real estate to each heir and definite parts of the mineral rights to each." Rosalind Gwin Hutton (Johnson) was an heir. Rosalind Gwin Hutton, the granddaughter, was not an heir.

It is noted also that after devising her lands in Holmes County, which composed one tract, to Rosalind Gwin Hutton, Mary Ryburn Hutton McCutchan, a daughter, and J. B. Hutton, Jr., a son, she inserted this phrase: "Ingress and egress to each part to be agreed upon by the owners as may be necessary." This has some bearing upon whether Rosalind Gwin Hutton mentioned as devisee of one hundred and sixty-nine acres was the minor, Rosalind Gwin Hutton. Apparently the testatrix was an unusually intelligent person and would likely know that a minor could not agree as to ingress and egress to the properties.

Certain evidence extrinsic of the will was offered by both parties to the litigation. Objection was made to some of this and sustained. Part of it was introduced without objection. We have already referred to some of it. We will discuss its competency after further disclosure of its nature.

On behalf of the minor, it was shown that she was christened and baptized as Rosalind Gwin Hutton and her birth was so recorded in the family Bible. It was also shown that in a book kept by the testatrix called "Daily Strength for Daily Needs" the minor was described as Rosalind Gwin Hutton, and in letters written July 29, 1951, and July 30, 1952, the testatrix addressed her as Miss Rosalind Gwin Hutton. In other words, the minor was named, christened and known as Rosalind Gwin Hutton, except, as shown hereinafter, the testatrix called her by different names.

On behalf of Mrs. Johnson, it was shown that the testatrix in speaking of the minor referred to her either as "Little Rosalind", "Sam's Rosalind" or "Rosalind Gwin Hutton, III"; and that she was the namesake of the testatrix. Testatrix's original name was Irene Rosalind Hutton. Later, the testatrix changed her name by eliminating therefrom the name "Irene" and inserting "Gwin" between "Rosalind" and "Hutton." It is also shown that Mrs. Johnson, about 1920, changed her name to correspond with that of her mother, as changed. She was thereafter known in the family as Rosalind Gwin Hutton. Her high school diploma and her graduation diploma from Belhaven College, Jackson, Mississippi, dated May 19, 1923, contained the name Rosalind Gwin Hutton. Her diploma from Millsaps College, Jackson, Mississippi, contained the same name. After her graduation she taught school and her teacher's license described her as Rosalind Gwin Hutton. When she and Mr. Johnson were married, April 14, 1943, her name was given as Rosalind Gwin Hutton. She was married by her Brother, Rev. Charlton D. Hutton, who signed the certificate of marriage. In a delayed certificate of birth dated August 4, 1942, her name is given as Rosalind Gwin Hutton. In a letter dated July 30, 1953, testatrix described the minor as "Sam's Little Rosalind". Again in another letter she referred to the minor as "Sam's

Rosalind." On July 1, 1942, the testatrix executed a note to Rosalind Gwin Hutton for $500, which amount had been loaned to the mother by the daughter. The record contains a letter written by the testatrix to her daughter, addressed to Rosalind Gwin Hutton at the home of the daughter, 226 N. State Street, Jackson, Mississippi. It is shown that Russ M. Johnson, the husband of Mrs. Johnson, the appellee, entered the military service in September 1943, and Mrs. Johnson and the testatrix resided together in the same home until about 1951. It is also shown that testatrix and Mrs. Johnson bore an affectionate relation towards each other. In other words, it is undisputed that since about the year 1920 Mrs. Johnson, the appellee, has gone by the name of "Rosalind Gwin Hutton", her married name "Johnson" being sometimes added.

And, as bearing directly upon the question under consideration, we quote a part of the testimony of Mrs. McCutchan, daughter of testatrix and one of the beneficiaries in the will whose rights are not being contested.

"Q. By what name was your sister known prior to her graduation from High School, now, in the home?

A. Always as 'Rosalind'.

Q. Did your mother have a namesake?

A. My sister, * * *

Q. Yes, ma'am.

A. * * * Rosalind Gwin Hutton.

Q. I want to know if you have ever discussed with your mother, the testatrix, the provisions which she made in her will for the devise of her 507 acres of land in Holmes County, Mississippi?

A. Yes.

Q. Did she explain her reasons for making the disposition she did make of those lands in Holmes County?

A. Yes.

Q. Did she tell you to whom she had devised those lands in Holmes County?

A. Yes.

Q. To whom did she say that she had devised such lands?

(A general objection was made and sustained by the Court.)

By Mr. Cox: May she answer it for the record, Your Honor?

By the Court: Yes, sir.

By Mr. Cox (continuing): Q. Answer for the record, Mrs. McCutchan.

A. The last week of August, in the presence of two of my sons, she told me * * *

Q. The last week of August, when?

A. 1955.

Q. All right.

A. * * * she told me in the presence of two of my sons that she was dividing her part of the Cooper Place between 'you and Jim and Rosalind', and then she discussed at length why she was doing it.

Q. What did she say was the reason?

A. She said that because of what she had given to Charlton in a certain number of years, she designated the dates, and because of what she had given in advance to Sam, that she was not giving them any land and that she was giving the Cooper Place to us three and then she told about the Green Place, but that wasn't Holmes County.''

██ ██ This is a case, then, where the identity of the devisee is in doubt, and where the designation of the devisee in the will might apply to one of two persons. The will is ambiguous in this respect to the extent that evidence extrinsic of the will is competent to identify the true devisee as intended by the testatrix. In Fuqua v. Mills, 221 Miss. 436, 73 So. 2d 113, this Court held that parol evidence is admissible to identify the legatee intended by the testatrix in a devise to the Methodist Church without further description.

In Strickland, et al. v. Delta Investment Company, 163 Miss. 772, 137 So. 734, this rule was deduced: "Where, from entire will, testator's meaning is doubtful, extrinsic evidence, including evidence that testator himself wrote will and was inexperienced in such matters, is admissible to clear up ambiguity."

In Beatty v. Trustees, 39 N. J. Eq. 452, the legacies were to "Sharlotty" and "Yeany" and oral proof was admitted to identify these parties. In Bartlett v. Remington, 59 N. H. 364, the bank account was "in trust for Sarah." Oral proof was admitted to show who the testator meant by the use of the word "Sarah." "Parol evidence was properly received to identify the person called 'Sarah'." In Jesseph v. Leveridge, 205 Ark. 665, the action was to construe the will. The testatrix gave property to her "niece" and her "nephew." Oral proof was admitted to show what the testatrix meant by nieces and nephews, grandnieces and grandnephews. The Court said: "In referring to a grandniece as a niece, the testatrix thus made her own dictionary." In Dehnckes Will, Surrogate's Court, Queens County, 116 N. Y. S. 2d 871, the testatrix had a husband and a grandson both having the same name. In a proceeding to construe the will, oral testimony was admitted to identify the beneficiary.

Page on Wills, Lifetime Ed., Sec. 1625, contains this announcement: "If the provisions of the will are found to apply equally to two or more persons or things, evidence of testator's actual intention as shown by his declarations and the like is admissible. Such declarations may be introduced in evidence to identify the property or the beneficiaries."

In Gilmer v. Stone, 120 U. S. 586, the testatrix devised property to "the board of foreign and the board of home missions." Extrinsic evidence was admitted to show that the testator was a member of the Presbyterian Church in the United States of America, and made a

gift to its Board of Foreign and Home Missions. The Court said: "Of the competency of this evidence there can be no doubt. The purpose of it was to place the court, as far as possible, in the situation in which the testator stood, and thus bring the words employed by him in contact with the circumstances attending the execution of the will."

██ ██ Going now to the merits of the case, the chancellor did not consider the extrinsic testimony. In his opinion he said: "That all one needs to do really is to take into consideration the fact that she had five children living at the time the will was executed; that she made a special provision in the will setting forth why two of those children were not being taken into consideration in the devise of the real estate. Taking into consideration that specific consideration in the will, together with the equal division of the land in question to three parties, one of whom was named 'Rosalind Gwin Hutton' looking again at this section of the will providing for mementoes for her grandchildren wherein it was very apparent that the testatrix endeavored to treat all of those grandchildren equally, it is sufficient, in the opinion of this court, to reach the conclusion that the testatrix is using the words 'Rosalind Gwin Hutton' in the devise of real estate meant her daughter as distinguished from the granddaughter." The extrinsic evidence supports that conclusion. It shows that since about 1920 that the appellee had been known by the name of "Rosalind Gwin Hutton" (sometimes adding Johnson) and this was the name generally used by the members of the family and especially by the testatrix. It is further shown by the testimony that great affection existed between the appellee and the testatrix. No reason whatever is shown why the testatrix would select the child of Sam D. G. Hutton in preference to her other grandchildren. On the other hand, the record discloses that the feeling which existed between the father of this minor and the testatrix

was, to say the least, somewhat strained. The testatrix displayed less feeling and affection for him than for any of her other children.

Her plan and purpose was to divide the land between her children and heirs, except that when she revised the will, seemingly July 19, 1955, she omitted Sam D. G. Hutton and Charlton D. Hutton, as devisees, and in the will, as well as in letters written by her, she fully explained that she had done that because she had already advanced to each of them more than he would be entitled to under her plan for devising her estate. To sustain the contention of appellant would upset and reverse that plan, and defeat the intent of the testatrix. We think the chancellor was correct in his conclusion.

■■■ ■ Appellant also contends that the Chancery Court of Hinds County, Mississippi, had no venue of this action. She says the petition should have been filed in Holmes County, Mississippi, where she and her parents reside and the land in controversy is located; that this is, in fact, a suit to try title to real property.

The will here involved was admitted to probate both in common and solemn form in Hinds County, in which testatrix had her residence and citizenship. J. B. Hutton, Jr. was appointed executor. He duly qualified as such and entered upon the administration of the estate. It was his duty to collect all of the assets, pay debts, taxes, etc., and wind up the estate. He, in conjunction with Mrs. Johnson, filed the petition here for construction of the will. It was his duty to inventory and collect the assets and pay the debts of the estate, and discharge whatever tax liens, inheritance or otherwise, which might exist against the land of the estate. It is further shown that the executor had in his possession for collection a promissory note for $1,600, dated June 25, 1955, executed by Sam D. G. Hutton to the testatrix for rent of lands in Holmes County, which note was past due and which Sam D. G. Hutton refused to pay. He claimed that his

minor daughter owned one-third of the land for the rent of which he had executed the note. It was the duty of the executor to collect this note and he could not know whether one-third of the note was or was not the property of the estate until the question of conflicting claims of ownership to the land had been adjudicated. It also appears that the lease of the lands by Sam D. G. Hutton yet had some time to run, and the right to collect future rents on the land were in question. Section 159, Miss. Constitution vests in the chancery court of this state full jurisdiction in "Matters testamentary and of administration." Section 1263, Miss. Code 1942, provides: "The court in which a will may have been admitted to probate * * * shall have jurisdiction to hear and determine all questions in relation to the execution of the trust of the executor * * * and all demands against it by heirs at law, distributees, devisees, legatees, wards, creditors, or others * * *''. Under this section this Court has held that the chancery court of a county in which nonexempt land of decedent is located does not have jurisdiction of bill by creditor seeking lien against the land for payment of complainant's claims when the decedent's estate is in process of administration in another county. Trippe v. O'Cavanagh, 203 Miss. 537, 36 So. 2d 166. In addition to this appellant did not raise the question of venue in her answer. She made an issue on the merits but not on venue of the action or jurisdiction of the chancery court. The cause was tried to a conclusion in the lower court, and we do not find that the contention was made that the Chancery Court of Hinds County did not have venue, or jurisdiction, of the cause. We hold that the said court did have venue of the action and jurisdiction of the subject matter.

 ██ The appellant-minor contends that the decree in this case is void as against the minor because no guardian ad litem of the minor was appointed by the chancery court. The minor and her father, with whom she resided,

were made parties to this petition, and they were both served with process. That brought the minor into court. Section 1863, Miss. Code of 1942. Section 1309 of said Code provides: "The court may appoint a guardian ad litem to any infant or defendant of unsound mind, and allow him suitable compensation payable out of the estate of such party, but the appointment shall not be made except when the court shall consider it necessary for the protection of the interest of such defendant; and a decree or judgment of any court shall not be void or erroneous because of the failure to have a guardian ad litem." The chancellor expressly held that the minor had very able and diligent counsel in said chancery court; that all of the rights of the minor were properly and unusually well protected and that no guardian ad litem was necessary. The record before us fully supports the finding of the chancellor. It might be noted also that the natural father and mother of the minor were both very active and diligent in behalf of the minor on the trial of the case. We see no merit whatever in this contention.

Affirmed.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.