545 F.2d 494
 77-1 USTC P 13,170
 ESTATE of Medora L. SALTER, Non Compos Mentis, Transferee,
Mississippi Bank & Trust Company, Conservator
(John A. Salter, Successor Conservator),
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 75-2137.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 17, 1977.
 
 Joe Jack Hurst, James S. Armstrong, Jackson, Miss., for petitioners-appellants.
 Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Loring W. Post, George G. Wolf, Gilbert E. Andrews, Acting Chief, App. Section, William A. Friedlander, Atty., Tax Div., Dept. of Justice, Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent-appellee.
 Appeal from the Decision of the Tax Court of the United States (Mississippi case).
 Before COLEMAN, GODBOLD and HILL, Circuit Judges.
 COLEMAN, Circuit Judge:
 
 
 1
 Taxpayer appeals from a decision of the Tax Court which upheld a determination of the Commissioner of Internal Revenue that the taxpayer was liable, as transferee, for a $22,552.99 deficiency in the federal estate tax liability of the estate of Cary W. Salter, Sr.[1] The issues presented are: (1) whether the estate of Cary W. Salter, Sr. is entitled to a marital deduction for the value of the property devised to his wife, Medora Lenow Salter, as provided in Section 2056(b)(5) of the Internal Revenue Code, 26 U.S.C. § 2056(b)(5), and (2) whether the children of decedent effected disclaimers under § 2056(d)(2) when they entered appearances individually in a Mississippi chancery court proceeding to construe the will of decedent. We are of the opinion that the Tax Court erred on the first point, which necessitates reversal. In the exercise of judicial economy, for a full disposition of all issues, we hold that the Tax Court correctly decided the second point.
 
 I. FACTS
 
 2
 The facts are stipulated.
 
 
 3
 Cary Weathersby Salter, Sr., a resident of Noxubee County, Mississippi, died testate, March 1, 1968. His survivors were his wife, Medora Lenow Salter, and four children, Cary Weathersby Salter, Jr., Flora Elizabeth Salter Tumlinson Emerson, Medora Lenow Salter Weaver, and John A. Salter, II.
 
 
 4
 On April 26, 1966, Mr. Salter made his last will and testament, duly signed and witnessed. The will contained the following pertinent provision:
 
 
 5
 ITEM TWO: It is my desire that all of my property, both real, personal or mixed, which I may own, or over which I may have the power of testamentary disposition at my death, shall go to my wife, Medora Lenow Salter, with any residual after her death to my hereinafter named children in equal parts. My children are: Cary Weathersby Salter, Junior, Flora Elizabeth Salter Tumlinson, John A. Salter, II, Medora Lenow Salter Weaver.
 
 
 6
 Two years later, April 15, 1968, the Chancery Court of Noxubee County admitted the will to probate.
 
 
 7
 On December 1, 1969, the decedent's federal estate tax return was filed, claiming a marital deduction of $122,628.33.
 
 
 8
 By statutory notice of liability dated August 23, 1972, the Commissioner of Internal Revenue notified taxpayer[2] (1) that the marital deduction claim on decedent's federal tax estate return was not allowable to the extent of $81,385.77 because the interest passing to Mrs. Salter under the will was a terminable interest, and (2) that he proposed to make an assessment against taxpayer, as transferee, in the amount of $22,552.99, plus interest.
 
 
 9
 Upon petition for a redetermination, the Tax Court sustained the Commissioner's determination. In so doing, the Tax Court held (1) that according to Mississippi law the interest Mrs. Salter received under the will constituted a life estate with a limited power of disposition, a terminable interest ineligible for the marital deduction, and (2) that the entries of appearance filed by the children in the will construction proceeding (later described) did not constitute disclaimers within the meaning of § 2056(d)(2) of
 
 
 10
 the Code. From this the taxpayer appeals. II. BASIC FEDERAL
 
 ESTATE TAX PRINCIPLES WITH REFERENCE TO THE
 MARITAL DEDUCTION
 
 11
 Section 2056 and the regulations promulgated by the Internal Revenue Service grant a deduction in computing the value of the taxable estate, not to exceed 50%, for the value of any property interest which passes from the decedent to his surviving spouse, to the extent such interest is includible in the decedent's gross estate.[3] As a general rule this marital deduction is not allowed in any interest which is "terminable".[4] An important exception to the exclusion of a terminable interest is that a devise to a surviving spouse of a life estate coupled with an unrestricted power of appointment in the surviving spouse may qualify for the marital deduction.[5] Qualifying interests passing to a surviving spouse as a result of a disclaimer by a third person of an interest passing to such person may also qualify,[6] as to which, post.
 
 
 12
 The Commissioner of Internal Revenue frames the case as follows:
 
 
 13
 "We do not here contend that a testamentary power of disposition is an essential prerequisite to allowance of the deduction under Section 2056(b)(5) of the Code. The issue, then, is . . . whether the surviving spouse had a power exercisable in favor of herself and exercisable alone and in all events."
 
 
 14
 We decide the case in that context.
 
 III. THE NATURE OF THE INTEREST
 
 15
 The marital deduction and the conditions under which it may be taken are matters of federal law, United States v. Stapf, 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963). The nature and extent of the devisee spouse's interest, however, are matters of state law, Morgan v. Comm., 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940). As to those issues a federal court will look to the state's highest court as the best authority on its own law, but, significantly, in the absence of authoritative rulings from that source the federal court must apply what it finds to be the state law "after giving 'proper regard' to relevant rulings of other courts of the State", Comm. v. Est. of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). Stated another way: in the process of finding state law if there is a controlling decision of the state's highest court, the federal courts must follow it; if there is none, we may give proper regard to relevant rulings of lesser state courts. Ordinarily, the determination of local law by a federal Court of Appeals will be accepted by the Supreme Court, Bosch, supra.
 
 
 16
 While there are Mississippi cases dealing with somewhat similar language, a fine-toothed search of the numerous decisions of the Mississippi Supreme Court in "will construction" controversies fails to reveal an instance in which that Court has determined the effect of a devise or bequest worded as here:
 
 
 17
 "All my property shall go to my wife, with any residual after her death to my children."The taxpayer contends that under a proper interpretation of Mississippi law, the will gives Mrs. Salter an absolute power of disposition over decedent's property during her lifetime, which is a qualifying interest.
 
 
 18
 The Commissioner maintains that Mississippi law would give the widow a simple life estate in decedent's property, coupled with a limited power to dispose for her support and maintenance, a terminable interest not excepted by the Code, not qualifying for the marital deduction.
 
 
 19
 At the outset, it is conceded, and we agree, that under Mississippi law Mr. Salter's will did not confer upon the widow the right to dispose of " the residual" by last will and testament, Selig v. Trost, 110 Miss. 584, 70 So. 699 (1916) and Spiva v. Coleman, 122 Miss. 142, 84 So. 144 (1920) (and numerous subsequent cases).
 
 
 20
 The issue is narrowed to whether, nevertheless, the will vested the widow with an unlimited power of disposal at her sole option at any time during her lifetime.
 
 
 21
 Relying on Vaughn v. Vaughn, 238 Miss. 342, 118 So.2d 620, 623 (1960), the Tax Court held that the Salter will vested only a life estate with a limited power of disposition for maintenance and support.
 
 
 22
 Vaughn significantly differs, however, from the case sub judice.
 
 
 23
 Vaughn's surviving widow was his second wife. He had three adult children by his first wife. He devised to his wife a life estate in their residence, certain lands, and personal property, with remainder in equal parts to his children. The will then proceeded to state:
 
 
 24
 I will, devise and bequeath unto my said wife the entire residue of my property of every kind, and any of same that is not consumed by her in her lifetime at her death to go to my said three children, share and share alike, or to the survivor, or survivors of them as the case may be.
 
 
 25
 It must first be noted that Vaughn did not leave any of his property in fee to his second wife. Everything except the residual estate was expressly limited to a life estate. The language with reference to the residual estate specifically directed that property not consumed by her in her lifetime should, at her death, go to the children. This left no room for doubt that the testator intended the wife to use and dispose of only that part of the residual estate which she could personally and reasonably "consume". This was an obvious limitation on any notion of a free and unfettered right in the widow, at her sole option, to dispose of any part of the residual estate not required for the specified objective.
 
 
 26
 It is not surprising that both the trial court and the Mississippi Supreme Court held the residuary clause to have vested only a life estate in the widow, carrying a limited or restricted power of disposition for her support and maintenance, with the remainder to the children. The Supreme Court said that "the manifest intention of the testator was that the widow who is a life tenant should receive a reasonable amount for her support and maintenance where the interest from the life estate is not sufficient for that purpose".
 
 
 27
 In its opinion, the Supreme Court did quote extensively from 33 Am.Jur., Life Estates, Sec. 39, dealing with limitations over of what remains after indefinite gift coupled with limited or qualified power of disposal. The Tax Court relied upon this quotation as authority for the proposition that Mr. Salter left his wife only a life estate with limited right of disposal for support and maintenance.
 
 
 28
 The trouble with this position is that, contrary to what happened in Vaughn, the Salter will nowhere mentions a "life estate". There was no indefinite gift, for Salter said that all property shall go to the wife. There was no language expressly or impliedly indicating any obligation to dispose of only a specified portion of the property, or limiting disposal to any prescribed standard.
 
 
 29
 We are convinced, therefore, that the Vaughn case is not dispositive of the issue we are required to decide, and we must journey further into the Mississippi precedents.
 
 
 30
 Before doing so, however, we first take note of the
 
 
 31
 IV. CONSTRUCTION OF THE WILL IN THE CHANCERY COURT
 
 
 32
 Under Mississippi law, the Chancery Courts have full jurisdiction over matters testamentary, Mississippi Constitution, Art. 6, Section 159(c). This includes jurisdiction to construe wills, subject only to appeal to the State Supreme Court, Hutton v. Hutton, 233 Miss. 458, 102 So.2d 424 (1958).
 
 
 33
 Prior to filing an estate tax return, Mrs. Salter filed a "Petition to Construe Will" in the Chancery Court praying, inter alia :
 
 
 34
 (a) That the court will order and decree that the legal effect of the last will and testament of Cary Weathersby Salter, Sr., Deceased, was to vest title to all of his personal and real property in Medora Lenow Salter, as life tenant with right of absolute disposition during her lifetime without the necessity for any remaindermen joining with her in the conveyance of the same;
 
 
 35
 (b) That the court will decree that the children of the said decedent named in Item 2 have only a remainder in such real and personal property as the said life tenant shall not have disposed of during her lifetime, said remainder to be shared in equal parts by said children * * *.
 
 
 36
 Each of the four children filed an "Entry of Appearance" in that proceeding stating:
 
 
 37
 I * * * (name of child), a surviving child of Cary Weathersby Salter, Sr., Deceased, one of the defendants named in the petition of Mrs. Medora Lenow Salter to construe the will of Cary Weathersby Salter, Sr., Deceased, do hereby enter my appearance in this cause, join in the petition of the petitioner and agree to be bound by any judgment or decree that may be entered by the court. I further represent to the court under oath, that I am above the age of 21 years and am under no legal incapacity.
 
 
 38
 On September 19, 1968, the Chancellor entered an "Order Construing Will" which read:
 
 
 39
 IT IS ORDERED, ADJUDGED AND DECREED, as follows, to wit:
 
 
 40
 1. The court finds that by the terms of the provisions of said will as recited in Item 2 of the will, the surviving widow, Medora Lenow Salter is vested with the following rights:
 
 
 41
 (a) The right to receive all of the income from the entire interest of all of the property, both real, personal or mixed, devised and bequeathed by the will of Cary Weathersby Salter, Sr., Deceased;
 
 
 42
 (b) That all of said income is payable to her as the same is earned and received;
 
 
 43
 (c) That Medora Lenow Salter has a complete, absolute and full power of disposition of the entire interest of said property to either herself or her estate;
 
 
 44
 (d) That the full power of disposition that is vested in Medora Lenow Salter is exercisable by her alone; and
 
 
 45
 (e) The entire interest devised and bequeathed to her is not subject to a power in any other person to appoint any part to any person other than the surviving spouse.
 
 
 46
 2. That Medora Lenow Salter is vested with a life estate in all of the property of the decedent plus the full right to dispose of any or all of the property acting exclusively by herself and without the necessity of the consent of any of the remaindermen during her lifetime.
 
 
 47
 The interpretation of the Chancery Court met each of the requirements of § 2056(b)(5).[7]
 
 
 48
 While the decree of the Chancery Court is not binding on this Court, we are entitled to "give it proper regard", Comm. v. Est. of Bosch, supra. In the absence of a case specifically in point, the best measure of that "regard", we think, would be to determine, from existing precedent, in our best judgment, whether the Supreme Court of Mississippi would have affirmed the Chancellor's decree had there been an appeal.
 
 V. RELEVANT SUPREME COURT DECISIONS
 
 49
 One of the more recent decisions of the Supreme Court of Mississippi in this field is Morman v. Thornhill, 240 So.2d 258 (Miss., 1970). Morman and wife executed a joint Last Will and Testament, as follows:
 
 
 50
 Second: We do hereby will, devise and bequeath unto the survivor of us all property of every kind and character which we or either of us may own at the time of the death of the first of us.
 
 
 51
 Third: After the death of both of us, it is our will that all the rest, residue and remainder of our property of every kind and character shall vest equally in our three children, J. P. Morman, Charles E. Morman and Mrs. Mary Lavellee Sublett.
 
 
 52
 Morman died and the will was probated. The widow then sold a house and lot to one of her daughters for.$19,000. One of the sons brought suit to cancel the conveyance, contending that "the widow was devised only a life estate in his father's property, with the remainder to the three children". The Supreme Court held that it was immaterial whether the will devised a fee simple title or only a life estate with remainder to the three children, that under either concept "the stern fact remains that the widow under the language in the will had the absolute right of disposition". The Court observed that the third item contained no specific prohibition of disposal and that the restriction therein contained related only to the disposal of the property subsequent to the death of the widow.
 
 
 53
 We are unable to detect any material difference between the Morman will and the Salter will. Both left the property to the wife, neither contained any prohibition against disposal, and the only stated restriction related to disposal of the property after the death of the wife. That Dr. Salter stated his wishes in one sentence while Morman's wishes were set forth in successive items should make no difference. The paramount consideration is the intent of the testator, reading the will as a whole, Cross v. O'Cavanagh, 198 Miss. 137, 21 So.2d 473, 476 (1945). Moreover, the Court distinguished Monroe v. Holleman, 185 So.2d 433 (Miss., 1966), cited by the Commissioner in support of his position.
 
 
 54
 The form of the will construed in Cross v. O'Cavanagh, supra, is similar to the will of Dr. Salter. In the Cross case the testatrix declared:
 
 
 55
 I give and bequeath to My three Sisters Bessie Margie and Stella and the heirs of Eva Cross, all my real estate and personal property I die possessed of To my Sister Minna Craig $1.00 (one dollar) and my Brother James O'Cavanagh $1.00 (one dollar). If at the death of my Sisters Bessie Margie and Stella, what is left of my estate it will go to the heirs of my Sister Eva Cross .
 
 
 56
 The court found that the testatrix's meaning was clear, that her paramount wish was to amply care for her three sisters and, after this had been accomplished, to give her property to the heirs of her deceased sister. To do so, "she gave each of her three sisters one fourth of her property with full right and power to use, consume, dispose of, and sell and convey title thereto if they desired to do so in their lifetime", eliminating only the right to dispose of the property by will, 198 Miss. 137, 21 So.2d at 476.[8]
 
 
 57
 In Cooper v. Simmons, 237 Miss. 630, 114 So.2d 614, 116 So.2d 215, 217 (1959), the will provided:
 
 
 58
 II. I devise and bequeath unto my sister Eugenia S. Shannon all my estate both real and personal of which I may die seized and possessed.
 
 
 59
 III. I hereby appoint my sister Eugenia Shannon as executrix without bond of my last will and testament, direct that she shall not be required to make any report to the courts touching my estate.
 
 
 60
 IV. It is my desire that whatever part of my estate remaining in her possession at time of her death shall be divided equally between my brother William D. Simmon's five children.
 
 
 61
 The Supreme Court interpreted the testator's intent to be that the first taker could dispose of the property as she saw fit.[9]
 
 
 62
 From the foregoing we are convinced that had there been an appeal the Supreme Court of Mississippi would have affirmed the decree of the Chancellor, holding that the will of the decedent conferred upon his widow an absolute, unqualified right of disposition.
 
 VI. DISCLAIMER
 
 63
 We agree with the reasoning and conclusions of the Tax Court, 63 T.C. 537, on the issue of disclaimer.
 
 CONCLUSION
 
 64
 Insofar as it held that Dr. Salter's will did not vest his widow with the unfettered power of disposition, the Judgment of the Tax Court is
 
 
 65
 REVERSED.
 
 GODBOLD, Circuit Judge, specially concurring:
 
 66
 I concur in the result, but my reasoning is different.
 
 
 67
 Judge Coleman discusses the relatively recent Mississippi Supreme Court decision of Morman v. Thornhill, 240 So.2d 258 (Miss., 1970), and says that "(w)e are unable to detect any material difference between the Morman will and the Salter will." I agree with this description of Morman. Two older cases by the Mississippi Supreme Court, Cross v. O'Cavanagh, 198 Miss. 137, 21 So.2d 473 (1945) (discussed by Judge Coleman) and Frierson v. Moorhead, 211 Miss. 811, 51 So.2d 925 (1951), construed claims very similar to that in the instant case and reached the same result as Morman.
 
 
 68
 Since we are bound to follow state law as set out by the highest court of the state, I would treat these three cases as dispositive without having to reach and rely upon the Mississippi chancery court decree construing the will and our projection of what the Mississippi Supreme Court would have decided if that decree had been appealed.
 
 
 
 [1]
 The Tax Court opinion is reported in 63 T.C. 537
 
 
 [2]
 On December 10, 1971, Mrs. Salter was declared to be incompetent to handle her own affairs by a local Chancery Court. The Mississippi Bank & Trust Company of Jackson, Mississippi, was appointed conservator of her estate; on February 12, 1972, John A. Salter was appointed as successor conservator
 
 
 [3]
 Sec. 2056
 (a) Allowance of Marital Deduction. For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.
 
 
 [4]
 Sec. 2056
 (b) Limitation in the case of life estate or other terminable interest
 (1) General rule. Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest
 (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and
 (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;
 and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))
 (C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.
 For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.
 
 
 [5]
 Sec. 2056(b)
 (5) Life estate with power of appointment in surviving spouse. In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse
 (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and
 (B) no part of the interest so passing shall, for purposes of paragraph (1) (A), be considered as passing to any person other than the surviving spouse.
 This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.
 
 
 [6]
 Sec. 2056(d) Disclaimers
 (2) By any other person. If under this section an interest would, in the absence of a disclaimer by any person other than the surviving spouse, be considered as passing from the decedent to such person, and if a disclaimer of such interest is made by such person and as a result of such disclaimer the surviving spouse is entitled to receive such interest, then
 (A) if the disclaimer of such interest is made by such person before the date prescribed for the filing of the estate tax return and if such person does not accept such interest before making the disclaimer, such interest shall, for purposes of this section, be considered as passing from the decedent to the surviving spouse, and
 (B) if subparagraph (A) does not apply, such interest shall, for purposes of this section, be considered as passing, not to the surviving spouse, but to the person who made the disclaimer, in the same manner as if the disclaimer had not been made.
 
 
 [7]
 See Treas.Reg. 20.2056(b)-5
 Marital deduction; life estate with power of appointment in surviving spouse.
 (a) In general. Section 2056(b)(5) provides that if an interest in property passes from the decedent to his surviving spouse (whether or not in trust) and the spouse is entitled for life to all the income from the entire interest or all the income from a specific portion of the entire interest, with a power in her to appoint the entire interest or the specific portion, the interest which passes to her is a deductible interest, to the extent that it satisfies all five of the conditions set forth below (see paragraph (b) of this section if one or more of the conditions is satisfied as to only a portion of the interest):
 (1) The surviving spouse must be entitled for life to all of the income from the entire interest or a specific portion of the entire interest, or to a specific portion of all the income from the entire interest.
 (2) The income payable to the surviving spouse must be payable annually or at more frequent intervals.
 (3) The surviving spouse must have the power to appoint the entire interest or the specific portion to either herself or her estate.
 (4) The power in the surviving spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events.
 (5) The entire interest or the specific portion must not be subject to a power in any other person to appoint any part to any person other than the surviving spouse.
 
 
 [8]
 See Old Ladies Home Ass'n v. Miller, 217 Miss. 187, 63 So.2d 786, 791 (1953), for the Mississippi Supreme Court's interpretation of Cross
 
 
 [9]
 For the reasons stated as to each we find that the following Mississippi cases do not fit the problem here:
 (1) Old Ladies Home Ass'n v. Miller, 217 Miss. 187, 63 So.2d 786 (1953), property willed "for duration of his lifetime", with further provisions and circumstances which the Supreme Court interpreted to negate any intent to allow disposal.
 (2) Wilkinson v. Wilkinson, 206 So.2d 848 (Miss., 1968), will devised a "usufruct", which was interpreted to deny power of disposition.
 (3) Selig v. Trost, 110 Miss. 584, 70 So. 699 (1915) and Spiva v. Coleman, 122 Miss. 142, 84 So. 144 (1920), widow expressly granted the power of disposition.