GRIFFIS, J.,
DISSENTING:
¶ 16. Finding the chancellor erred in excluding competent evidence and that a genuine issue of material fact exists as to Paul’s intent, I dissent. I would reverse the summary judgment and remand this case for further proceedings.
¶ 17. Paul and Frances went to their lawyer, Jimmy Fisher’s office to execute their wills. Fisher maintains it was their intent to divide their estates equally among all six children. The majority contends that the separate wills were “very similar in several aspects.” Indeed, Paul and Frances executed reciprocal wills that were virtually identical. There was evidence that all children were aware of this intention. Neither Paul nor Frances ever revoked his or her will.
¶ 18. The third paragraph provided that the household furniture, furnishings and fixtures would first go to the surviving spouse. If the spouse predeceases the testator, these items would be sold at auction and the proceeds split fifty percent to Paul’s children and fifty percent to Frances’ children. The effect of this clause is that these items are to be ultimately split *544 evenly among both Paul’s and Frances’ children.
¶ 19. The fourth paragraph in both wills gave a life estate in the testator’s undivided one-half interest in the marital home to the surviving spouse. The remainder was to go to their respective children. The effect of this clause is that the home is ultimately split evenly among the children.
¶ 20. The fifth paragraph in both wills contains the residuary clause, which is quoted by the majority. The sixth paragraph in both wills states, “Notwithstanding any of the foregoing” if Paul and Frances “die in a common disaster” all their property “except that bequeathed ... in the SECOND [sic] paragraph” is to be sold at auction. An undivided one-half interest in the proceeds passes to Paula, Rhonda, and Martha, per stirpes and an undivided one-half interest passes to Jimmy Dale, Mary, and Jamie Ray, per stirpes.
¶ 21. The majority does not discuss the controversy that concerned Butch Baker. I believe it is relevant. It was alleged that Baker was raised like one of Paul’s children, even though Baker was mentioned in neither Paul nor Frances’ will. On March 30, 2004, all six of Paul’s and Frances’ children agreed to give Paul’s Cadillac and $30,000 to Baker. Both the vehicle and the money was to come from Paul’s residuary estate.
¶ 22. Two weeks later, Paul’s children sued Frances’ children and contested the interpretation of the residuary clause. Paul’s children claimed the residuary bequest to Frances lapsed and went to them as Paul’s only heirs-at-law. The net result of Paul’s children’s claim is that ultimately three-fourths of Paul and Frances’ combined residuary estate would go to Paul’s children, while only one-fourth would pass to Frances’ children. Frances’ children argued that Paul’s intent was for the estate to be divided equally among all six children. Both sides urged the chancellor to issue summary judgment. The chancellor entered summary judgment in favor of Paul’s children.
¶ 23. The majority affirms the chancellor and finds no ambiguity in Paul’s will. Thus, the majority affirms the chancellor’s summary judgment that determined that Frances’ children would not be entitled to any property under Paul’s residuary clause. I disagree.
¶ 24. Frances’ children presented an affidavit from Jimmy Fisher, the attorney who drafted both wills, where he testified that the intent of Paul and Frances was that all six children divide their estates equally, no matter which parent died first. Frances’ children also claim that, when Paul’s will is read as a whole, and against the backdrop that it was a reciprocal will with Frances, and the only interpretation of the residuary clause was that both wills are to be interpreted so that they take Frances’ share under the residuary clause.
¶ 25. I am of the opinion that there was a clear dispute over Paul’s intent. Frances’ children offered evidence that would establish a genuine issue of material fact that would have to be resolved at trial. The chancellor, however, determined that the evidence offered by Frances’ children was inadmissible and did not consider the evidence of Paul’s intent when she granted summary judgment in favor of Paul’s children. The chancellor concluded that the intent of the testator must come solely from the will and not from outside evidence. Since the residuary clause did not indicate what would happen to Frances’ bequest, if she died before Paul, the chancellor held that it lapsed and went to Paul’s children, as his heirs-at-law.
¶ 26. The ultimate inquiry in any will is the intent of the testator. In re Granber- *545 ry’s Estate, 310 So.2d 708, 711 (Miss.1975). There are two ways that extrinsic evidence may be considered to prove a testator’s intent. The first rule is that parol evidence is permissible to prove intent if the will is ambiguous. Ross v. Brasell, 511 So.2d 492, 494 (Miss.1987). However, there are two types of ambiguity. Robert A. Weems, Wills and Administration of Estates in Mississippi § 9:9 (3d ed. 2003). If a will is ambiguous on its face, this is “patent ambiguity.” Id. Nevertheless, even a will that seems clear on its face may in reality be ambiguous. Id. If the testator’s intent is uncertain when it is applied to the external facts, this is referred to as “latent ambiguity.” Id.
¶ 27. For example, the will at issue in Hutton v. Hutton, 233 Miss. 458, 461, 102 So.2d 424, 425 (Miss.1958), was clear on its face when it bequeathed real property to “Rosalind Gwin Hutton.” The will referred to the testator’s granddaughter. Id., 102 So.2d at 425. However, parol evidence was allowed to show that the will was latently ambiguous, because the testator had a daughter named Rosalind Gwin Hutton Johnson, whom she often referred to without the “Johnson.” Id. at 465-66, 102 So.2d at 426. Furthermore, parol evidence was allowed to show that the testator told another daughter that Mrs. Johnson was the intended beneficiary. Id. at 468,102 So.2d at 428.
¶ 28. Therefore, the first step is to determine if the will is ambiguous on its face. The chancellor was correct to find Paul’s will to be unambiguous on its face. The terms used in the will are all clear, and the will is internally consistent.
¶ 29. The second step that the chancellor should have taken was to determine if Paul’s will was latently ambiguous. Extrinsic evidence is necessary to make this determination. Instead, the chancellor expressly declined to look at outside evidence offered by Frances’ children, and this was error. Considering Frances’ will and the fact that both wills made extensive provisions to make sure that all six children took equally in all else, the residuary clause becomes latently ambiguous. By providing for Frances, did Paul believe he was ultimately providing for her children? Does “Frances” mean “Frances” or does it mean “Frances’ estate?” This is certainly one interpretation of the clause, especially in light of the fact that this would have been the result had Paul died first. This was the effect of Frances’ residuary clause. Half of her estate went to Paul, and through him, went to his children. The problem with this interpretation is that Paul specifically provided for Frances’ death in other clauses in the will but did not do so here. The other interpretation is that Paul did not want Frances’ children to take under the residuary clause. The problem with this interpretation is that it is inconsistent with Paul’s wishes in clause six. Paul’s will provided that should he and Frances die in a common disaster, then all of his estate, less that disposed of in clause two, was to be split equally between his three children and Frances’ three children. Why would Paul treat all six children equally with respect to the home, furniture, and the entire estate if he died with or before Frances, yet keep her kids out of his residuary estate if he died after Frances? For these reasons, I find the residuary clause to be latently ambiguous as to the disposition of half of Paul’s residuary estate.
¶ 30. Another reason the trial court should have considered extrinsic evidence is because a court is obliged to consider the surrounding circumstances in determining testator’s intent. Granberry, 310 So.2d at 711. This necessarily implicates extrinsic evidence. See, e.g., Estate of Wright, 829 So.2d 1274, 1277(¶ 7) (Miss.Ct. *546 App.2002); Weems, supra at § 9:10. “When the intent of the testator has been in this way ascertained, all minor, subordinate and technical rules of construction must yield to the paramount intent thus ascertained.” Granberry, 310 So.2d at 711 (emphasis added).
¶ 31. The extrinsic evidence that accompanied Frances’ children’s response to summary judgment was Frances’ will and Fisher’s affidavit. I am of the opinion that both items were admissible to prove Paul’s intent. Frances’ will is admissible, as it was part of the surrounding circumstances at the time Paul’s will was written and executed. Furthermore, the record reveals that Paul’s children did not object to Frances’ will being admitted into evidence.
¶ 32. Fisher’s affidavit states that it was Paul and Frances’ intention to have their combined estates split equally among all six children after both Paul and Frances died. Declarations of the testator expressing his intent may be admitted to clear up an ambiguity contained in the will. Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1195 (Miss.1990).
¶ 33. To the extent that Fisher’s affidavit consists of statements of the testator expressing his intent, this evidence was admissible because the will should have been found to be latently ambiguous. To the extent that Fisher’s affidavit explains the circumstances surrounding the execution of Paul’s will (i.e., it was simultaneously executed with Frances as a reciprocal will), it was admissible to prove Paul’s intent regardless of whether there was ambiguity or not.
¶ 34. With this evidence, I reach the conclusion that there exists a genuine issue of material fact concerning Paul’s intent. When his will is read in light of this evidence, it suggests Paul intended to treat the disposition of his estate the same as the disposition of Frances’ estate. Not only did he execute his will simultaneously with hers, using the same attorney, but their wills are virtually identical. It also suggests that Paul drafted his will with an eye towards his estate’s ultimate equal disposition to all of the children. However, this is a genuine issue of material fact that is in dispute and should be resolved by the chancellor. Both sides have presented competent evidence that gives rise to the genuine material issue of whether or not Paul intended for all six children to share alike in his residuary estate.
¶ 35. Accordingly, I find that the chancellor erred in granting summary judgment and respectfully dissent. I would remand this case for further proceedings.
LEE, P.J., JOINS THIS SEPARATE OPINION.